Tia Marie JOHNSON and State of
Minnesota, Petitioners, Appellants,

v.

Terry Lee HUNTER, Respondent.

Nos. C2–88–1765, C2–88–2012.

Supreme Court of Minnesota.

Nov. 9, 1989.

Brad A. Johnson, St. Paul, for appellants.

Jay P. Yunek, Erickson, Zierke, Kuderer, Madsen & Wollschlager, P.A., Fairmont, for respondent.

POPOVICH, Chief Justice.

In 1969, Stephanie Johnson Saunders brought a paternity action in Hennepin County alleging Terry Lee Hunter was the father of her daughter, Tia Marie Johnson. That action was orally dismissed with prejudice after Saunders failed to appear at trial. In 1985, Tia Marie Johnson brought a paternity action in Ramsey County against Hunter, which was dismissed based on res judicata after Hunter obtained an order nunc pro tunc reflecting the 1969 dismissal; Johnson appealed. In a Hennepin County action the state's motion to vacate either the order nunc pro tunc or the dismissal with prejudice was denied; the state appealed. Hunter was awarded costs and attorney fees in the Hennepin County motion to vacate but not in the Ramsey County paternity action. The appeals were consolidated and a court of appeals panel affirmed, holding Johnson's action was barred by the 1969 dismissal and the trial courts correctly decided the attorney fees issues. *Johnson v. Hunter*, 435 N.W.2d 821, 823–24 (Minn.App.1989). We granted further review, and now affirm in part and reverse in part.

I.

In 1969, Stephanie Johnson Saunders, as complaining witness, and the State of Minnesota brought a paternity action in Hennepin County District Court pursuant to Minn.Stat. § 257.19 (1969) (repealed 1971) against respondent Terry Lee Hunter as the alleged father of Saunders' daughter, Tia Marie Johnson. Not only was Tia Marie just six months old at the time, but she was neither named as a party nor represented by independent counsel or a guardian ad litem in the 1969 action. The matter was continued several times for various reasons. Finally, when Saunders failed to appear for trial, court recessed and numerous attempts were made to contact her. Although the county attorney had not been in contact with Saunders for almost a month and did not subpoena her for trial, Saunders apparently told a representative from the welfare department about ten days prior to trial that she "want[ed] to drop everything" and was expecting a settlement. When she did not appear after court reconvened, the 1969 case was orally dismissed with prejudice for lack of prosecution.

In 1985, Saunders initiated a paternity action in Ramsey County District Court again alleging Hunter was the father of Tia Marie Johnson. Johnson was later substituted for Saunders as plaintiff and a guardian ad litem was appointed for her. The guardian was subsequently removed when Johnson reached the age of majority. Blood tests were ordered, with the results indicating a strong probability that Hunter was Johnson's father. On January 21, 1988, Hunter obtained an ex parte order nunc pro tunc in Hennepin County District Court reflecting the 1969 oral dismissal with prejudice. The Ramsey County District Court then dismissed Johnson's action on February 24, 1988, based on the Hennepin County order nunc pro tunc and denied Hunter's request for costs and attorney fees.

The state moved on July 15, 1988, in Hennepin County District Court to vacate the order nunc pro tunc and reinstate the Hennepin County action or, in the alternative, to vacate the dismissal with prejudice and enter a dismissal without prejudice. The motion was denied and Hunter was awarded $1,000 in costs and attorney fees.

Johnson appealed the Ramsey County judgment dismissing her action; the state appealed the Hennepin County judgment denying its motion to vacate. These appeals were consolidated and the court of appeals panel affirmed, holding the oral 1969 Hennepin County dismissal properly granted, Johnson's paternity action barred by the dismissal order, and the attorney fees issues not erroneously decided. *Johnson v. Hunter*, 435 N.W.2d 821, 822–24 (Minn.App.1989).

## II.

■ Vacating an order is a matter vested in a trial court's discretion and will not be overturned absent a clear abuse of that discretion. *See Kosloski v. Jones*, 295 Minn. 177, 180, 203 N.W.2d 401, 403 (1973) (default judgment). The Hennepin County District Court emphasized that signing the order nunc pro tunc in 1988 was "merely a housekeeping chore" putting the 1969 dismissal in proper form. Although we agree with Hunter's counsel, who conceded at oral argument that giving notice to the appropriate parties would have been better practice than obtaining the order ex parte, we cannot say the lower court abused its discretion in refusing to vacate the order.

Ordering an involuntary dismissal pursuant to Minn.R.Civ.P. 41.02(1) also rests within a trial court's discretion. *See, e.g., Butkovich v. O'Leary*, 303 Minn. 535, 536, 225 N.W.2d 847, 849 (1975). The court of appeals panel held the dismissal was proper because of Saunders' "apparent refusal or unwillingness to appear for trial." *Johnson*, 435 N.W.2d at 822–23. While the record indicates contradictory reasons for Saunders' absence, we again decline to say the lower court abused its discretion in refusing to vacate the dismissal with prejudice and enter a dismissal without prejudice. Accordingly, we affirm on this issue.

## III.

In *Voss v. Duerscherl*, 425 N.W.2d 828, 831 (Minn.1988), we concluded a "paternity action did not survive against the father and siblings of the deceased putative father." Whether an unrepresented child would be barred from maintaining a subsequent paternity action was queried in dicta. *Id.* at 831 n. 9. The issue is now before us and implicates the related doctrines of res judicata and collateral estoppel.

> Under res judicata or "claim preclusion," a final judgment on the merits bars a second suit for the same claim by parties or their privies. Under collateral estoppel or "issue preclusion," once an issue is determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

*Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn.1984) (citations omitted); *see also* 4 D. McFarland & W. Keppel, *Mason's Minnesota Civil Practice* § 2533 (1979) (hereinafter *Mason's*).

Although blood and genetic tests were performed, no evidence whatsoever was presented in either the 1969 or 1985 actions on the issue of parentage. Because "[t]here can be no estoppel when there is a reasonable doubt as to whether a fact was actually adjudicated," *Wolfson v. Northern States Management Co.*, 221 Minn. 474, 479, 22 N.W.2d 545, 548 (1946), we doubt whether collateral estoppel applies in this procedural context and focus our analysis on res judicata. The parties agree the claims are identical, but dispute whether there was a final adjudication on the merits and privity for res judicata to apply.

■ The court of appeals panel held an oral dismissal with prejudice, later reflected in a written order nunc pro tunc, is a final adjudication for res judicata purposes. *Johnson*, 435 N.W.2d at 824. We agree. Even though a case dismissed with prejudice for lack of prosecution, as was the 1969 action, is disposed of on nonsubstantive ground, *see Lampert Lumber Co. v. Joyce*, 405 N.W.2d 423, 425 (Minn.1987), such a dismissal nonetheless "operates as an adjudication on the merits," *Firoved v. General Motors Corp.*, 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967), and thus can form the basis for res judicata.

We are mindful of the importance of determining the proper parties in paternity actions for res judicata purposes. *See Voss,* 425 N.W.2d at 831 (father and deceased siblings of putative father not proper parties). While not involved in this appeal, the state was a party in the 1969 action. Saunders, as complaining witness, was also a party in the action. *See State v. Sax,* 231 Minn. 1, 8, 42 N.W.2d 680, 684–85 (1950) (mother is party to illegitimacy proceedings even if action is brought by state). Consequently, Saunders and the state are barred by res judicata from bringing another paternity action against Hunter. Johnson would also be precluded from bringing her paternity claim, even though she was not named in the 1969 action, if she were in privity with the original parties. 4 *Mason's* § 2535, at 120.

Without addressing her relationship with the state, the court of appeals panel determined Johnson was in privity with her mother in the 1969 action. *Johnson,* 435 N.W.2d at 823. The parent-child relationship, however, is traditionally excluded from privity notions for res judicata purposes. *E.g., Brown v. Terry,* 375 So.2d 457, 458–59 (Ala.1979) (quoting 1B J. Moore, *Moore's Federal Practice* ¶ 0.414[11] (2d ed.1974)); *Arsenault v. Carrier,* 390 A.2d 1048, 1051 (Me.1978); *see generally* Comment, *Privity, Preclusion, and the Parent–Child Relationship,* 1977 B.Y.U.L.Rev. 612, 618–19 (hereinafter *Privity* ). This court has never specifically held that privity encompasses familial relationships, instead believing privity must be determined by the facts of each case. *See, e.g., McMenomy v. Ryden,* 276 Minn. 55, 59, 148 N.W.2d 804, 807 (1967). Resolution of this issue turns on the relationship between Johnson, Saunders and the state under the paternity statute and the commonality of their interests. *See Margo–Kraft Distribs., Inc. v. Minneapolis Gas Co.,* 294 Minn. 274, 278, 200 N.W.2d 45, 48 (1972); 4 *Mason's* § 2535.

A child was not specifically authorized to bring a paternity action in 1969 and no reference is made in the statutory language to a child as a party in such proceedings. *See* Minn.Stat. §§ 257.18–257.19 (1969) (repealed 1971). The legislature amended the statute in 1980 to allow the child a cause of action. *See id.* § 257.57 (1988). Also, under our current Parentage Act, "[t]he child *may* [, and in certain instances, *must* ] be made a party to the action." *Id.* § 257.60 (emphasis added). The Act further provides "[t]he child's mother or father may *not* represent the child as guardian or otherwise," *id.* (emphasis added), by which the legislature recognized the inherent differing interests involved in a paternity action. The provision also contradicts an assertion of privity between parent and child in this context. Moreover, unlike the 1969 statute, the current Act provides: "If the child is a minor and is made a party, a general guardian or a guardian ad litem shall be appointed by the court to represent the child." *Id.*

At the time of the 1969 action, Johnson was a six-month-old infant unrepresented by independent counsel and without a guardian ad litem. We find it troublesome to hold that a child was a party or privy to a paternity action in these circumstances. *Accord Ex parte Snow,* 508 So.2d 266, 268 (Ala.1987); *Maller v. Cohen,* 176 Ill.App.3d 987, 126 Ill.Dec. 402, 406, 531 N.E.2d 1029, 1033 (1988), *cert. denied,* 125 Ill.2d 567, 130 Ill.Dec. 482, 537 N.E.2d 811 (1989); *Commonwealth ex rel. Gray v. Johnson,* 7 Va.App. 614, 376 S.E.2d 787, 790 (1989). The Uniform Parentage Act requires joinder of children and appointment of guardians ad litem in all paternity proceedings. *Unif. Parentage Act* § 9, 9B U.L.A. 312 (1987); *see also Department of Health & Rehabilitative Servs. ex rel. Ward v. Wyatt,* 475 So.2d 1332, 1334 (Fla.Dist.Ct. App.1985); *Gray v. Johnson,* 7 Va.App. at ——, 376 S.E.2d at 790; *see generally Privity,* at 640 (mandatory joinder "[p]erhaps the most viable solution to the preclusion problem"). Indeed, Minnesota recognizes the importance of protecting a child's interests through such representation. *See In re Saxton,* 309 N.W.2d 298, 301 (Minn.1981) (because a child's welfare is paramount, trial court should consider appointing a guardian ad litem even at parties' expense), *cert. denied,* 455 U.S

1034, 102 S.Ct. 1737, 72 L.Ed.2d 152 (1982); *see also* Minn.R.Juv.Ct. 5.01 (circumstances when "[t]he court shall appoint a guardian ad litem"). The legislature may wish to consider amending the Parentage Act's permissive language regarding joinder of children and guardian appointment to reflect these concerns in view of our disposition in this case.

In arguing Johnson was in privity with Saunders and the state in the 1969 action, Hunter relies on *Sax*, where we said that illegitimacy "proceedings are for the benefit of the mother as well as the child and the public." 231 Minn. at 7, 42 N.W.2d at 684. *Sax*, however, determined only that a mother is a party to paternity proceedings and entitled to appeal a support order, but did not address the child's status for res judicata purposes. *See also State v. E.A.H.*, 246 Minn. 299, 304–05, 75 N.W.2d 195, 199–200 (1956) (mother has standing to appeal judgment of nonpaternity in action brought by state). Even if Saunders originally acted on Johnson's behalf in a parens patriae capacity, that responsibility ended and the interests were realigned when Saunders failed to appear at trial in 1969 and was removed from the 1985 action. Moreover, while the Commissioner of Public Welfare was obligated "to take care that the interests of the child are safeguarded [and] that appropriate steps are taken to establish his paternity," Minn. Stat. § 257.33 (1969), we doubt whether Johnson's interests were adequately represented in the 1969 action.

While the state's interest in paternity actions is primarily to prevent the child from "becom[ing] a public charge" by securing child support, *id.* § 257.19, "[a] child's interests are much broader." *Spada v. Pauley*, 149 Mich.App. 196, 205, 385 N.W.2d 746, 750 (footnote omitted), *cert. denied*, 425 Mich. 1203, 389 N.W.2d 85 (1986); *see also Settle ex rel. Sullivan v.*

*Beasley*, 309 N.C. 616, 620–21, 308 S.E.2d 288, 290–91 (1983). For example, Johnson points to several rights unique to her as a child, including: inheritance (Minn.Stat. § 524.2–109 (1988)); medical support (*id.* § 518.171, subd. 5); causes of action (*id.* ch. 573); workers' compensation dependent's allowances (*id.* § 176.111, subd. 1); and veteran's education benefits (*id.* §§ 197.75–197.752).[1] Unlike the state's interests, there may be psychological and emotional benefits to the child from an accurate establishment of paternity. *See State ex rel. Kremin v. Graham*, 318 N.W.2d 853, 855 n. 4 (Minn.1982). An Arizona court cited our decision in *Sax* due to the similarity between Arizona's and Minnesota's (1969) paternity statutes and held that a prior dismissal of a state's paternity action was res judicata as to the child. *Bill ex rel. Bill v. Gossett*, 132 Ariz. 518, 522–23, 647 P.2d 649, 653–54 (Ct.App. 1982). That court, however, stressed the common economic interest of the state, mother and child, particularly the right to child support, rather than the other interests a child may have that are jeopardized in such a dismissal. *Id.* at 523, 647 P.2d at 654.

The child's and mother's interests in a paternity determination also may be different. One court, in recognizing this potential conflict, noted:

> A mother may have a variety of reasons for not initiating paternity proceedings: she may have a continuing relation with or affection for the father; she may wish to avoid continuing any relation with the father, including child support; she may wish to avoid the disapproval of her family or the community that she believes a paternity action would produce; she may be subject to the emotional strain and confusion that often attend the birth of a child born out of wedlock and continue for a prolonged period, hindering any effort by her to seek child support; she

---

1. Johnson signed a standard form paternity complaint on May 9, 1985, which requests "that judgment be entered concerning the child's name, visitation, current support, the parties' proportion of the expenses of the mother's pregnancy and confinement, and the parents' proportion for the child's support incurred in the immediately preceding two years." We note that Saunders is barred from recovering on the basis of this complaint, should paternity be established, due to the 1969 dismissal. We also note that current child support would not be available to Johnson because she is no longer a minor.

may be able to support the child and not foresee a change in her circumstances. *In re R.W.L.*, 116 Wis.2d 150, 160–61, 341 N.W.2d 682, 686 (1984); *see also Spada*, 149 Mich.App. at 204–05, 385 N.W.2d at 750; *Gray v. Johnson*, 7 Va.App. at ——, 376 S.E.2d at 791. Hunter characterizes Johnson's interests as mere "incidental interests that are a part of the package" of any paternity action. We cannot, however, so easily dismiss the significant interests at stake for a child in a paternity determination. Without addressing the unique rights Johnson claims, the court of appeals panel concluded: "There is no evidence that Tia [Johnson] and her mother's interests were inconsistent, and if they were, a guardian ad litem should have been appointed to represent Tia." *Johnson*, 435 N.W.2d at 823.

"[E]stablishment of the parent-child relationship is the most fundamental right a child possesses to be equated in importance with personal liberty and the most basic constitutional rights." *Ruddock v. Ohls*, 91 Cal.App.3d 271, 277–78, 154 Cal.Rptr. 87, 91 (1979); *see also Gray v. Johnson*, 7 Va.App. at ——, 376 S.E.2d at 791. Analogously, we have stated the right to establish family relations is "inherent and inalienable." *Thiede v. Scandia Valley*, 217 Minn. 218, 224–25, 14 N.W.2d 400, 405 (1944); *see also State v. Gray*, 413 N.W.2d 107, 111 (Minn.1987) (scope of constitutional right of privacy). Depriving Johnson of the basic right to establish parental relations arguably would not comport with the constitutional protection granted illegitimate children. *See, e.g., Gomez v. Perez*, 409 U.S. 535, 538, 93 S.Ct. 872, 875, 35 L.Ed.2d 56 (1973) (state law denying right of paternal support to illegitimate children while granting right to legitimate children violates equal protection); *Weber v. Aetna Casualty & Sur. Co.*, 406 U.S. 164, 165, 92 S.Ct. 1400, 1401, 31 L.Ed.2d 768 (1972) (state's "denial of equal recovery rights to dependent unacknowledged illegitimates" is unconstitutional); *Spada*, 149 Mich.App. at 204–06, 385 N.W.2d at 750–51 (paternity statute unconstitutional because it did not provide child with remedy to determine parentage and support); *Quaderer v. Forrest*, 387 N.W.2d 453, 457 (Minn.App.1986) (departure from "child support guidelines based on whether or not the child's parents had been married" violates equal protection). We are reminded that "no child is responsible for his [or her] birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent." *Weber*, 406 U.S. at 175, 92 S.Ct. at 1406.

Other constitutional concerns are raised because "[t]he child not a party and not adequately represented may not receive his or her day in court, and the fundamental due process right to be heard may be abridged." *Gray v. Johnson*, 7 Va.App. at ——, 376 S.E.2d at 791. The opportunity to be heard in a prior action also is an underlying policy reason allowing the application of res judicata. *See Ellis v. Minneapolis Comm'n on Civil Rights*, 319 N.W.2d 702, 704 (Minn.1982); 4 *Mason's* § 2535, at 121. Because Johnson was not named as a party and was unrepresented in the 1969 action and because the issue of parentage has never been reached, it is difficult to say she had an adequate opportunity to be heard when her mother failed to appear for trial. At that point their interests differed. The court of appeals panel held Saunders' "unexcused failure [to appear in 1969] does not mean that she, and as a result Tia [Johnson], did not have an opportunity to litigate the issue of paternity." *Johnson*, 435 N.W.2d at 824. We disagree.

The court of appeals panel declined to reach a decision that "would be tantamount to saying there are two separate actions in each paternity proceeding and, perhaps, two inconsistent jury verdicts." *Id.* at 823. While this reluctance reflects the important policies of finality and consistency, we now feel these concerns are outweighed in this context by the paramount interests of a child in an adjudication on the merits of paternity. Accordingly, we hold that Johnson is not precluded by the 1969 dismissal with prejudice from bringing a paternity action against Hunter. We hope our holding here will instill in alleged fathers the incentive to accept responsibility for their

unacknowledged children. Unless a child's specific interests on paternity are addressed on the merits, a separate cause of action will be available to such child in another proper action.

## IV.

Under Minn.Stat. § 549.21, subd. 2 (1988), an award of attorney fees and costs is proper "if the party or attorney against whom costs * * * are charged acted in bad faith; asserted a claim or defense that is frivolous and that is costly to the other party; asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the court." Rule 11 provides for assessment of sanctions, including attorney fees, for similar reasons. Minn.R. Civ.P. 11. The award of attorney fees is discretionary with a trial court. Pursuant to this authority, the Hennepin County trial court awarded Hunter $1,000 in costs and attorney fees in connection with the 1988 motion to vacate. The Ramsey County trial court denied Hunter's motion for attorney fees and costs in defending Johnson's 1985 action against him. The court of appeals panel held "[t]he trial courts did not err in their decisions concerning attorney fees." *Johnson*, 435 N.W.2d at 824. While the state in the Hennepin County matter filed an appeal in the court of appeals (which was consolidated with appellant's appeal there) and joined in the petition for review to this court, it did not file a brief or participate further. It can no longer be considered a party here. Therefore, we see no reason to disturb the panel's holding or discuss the issue further in that matter. Because we hold Johnson is not precluded from bringing a paternity action against Hunter, we need not reach the issue whether the Ramsey County trial court properly denied Hunter's request for attorney fees and costs.

Affirmed in part and reversed in part.