**In re the Marriage of Corrine Marie REYNOLDS, Petitioner, Respondent,**

v.

**Michael R. REYNOLDS, Respondent.**

**COUNTY OF NICOLLET, Intervenor, Appellant,**

v.

**Patrick SULLIVAN, Jim Sullivan, Third-Party Respondents, Respondents.**

No. C8–89–1618.

Court of Appeals of Minnesota.

April 17, 1990.

Review Granted June 15, 1990.

Corrine Marie Reynolds, North Mankato, pro se.

Walter J. Gates III, Mankato, for Michael R. Reynolds.

W.M. Gustafson, Nicollet County Atty., Michael K. Riley, Asst. County Atty., St. Peter, for County of Nicollet.

Jay P. Yunek, Fairmont, for Patrick Sullivan.

Leif P. Carlson, Mankato, for Jim Sullivan.

Considered and decided by PARKER, P.J., and FORSBERG and NORTON, JJ.

## OPINION

NORTON, Judge.

Appellant Nicollet County seeks review of the trial court's order refusing to appoint a guardian ad litem to represent two minor children involved in a paternity dispute. We reverse.

## FACTS

Michael and Corrine Reynolds were married in 1975. Each had children from previous marriages. In July 1979, a son, B.B.R., was born. A second son, D.P.R., was born in February 1981. In October 1984, Corrine petitioned for dissolution naming these two sons as issue of the marriage. In his answer, Michael responded that he was not the biological father of the two boys. Michael had a vasectomy in 1972 and tests in 1972 and 1984 confirmed that the surgery was successful.

Corrine then acknowledged that her pregnancy with B.B.R. resulted from a liaison with third party respondent Patrick Sullivan and that her pregnancy with D.P.R. resulted from a liaison with Patrick's brother, third party respondent Jim Sullivan.

Nicollet County then intervened because Corrine was receiving public assistance and had assigned her support rights to Nicollet County. Because Michael denied paternity of the children, Nicollet County brought a complaint against the two brothers Sullivan.

In 1986, the trial court dissolved the marriage, reserving the issues of custody, visitation, support and paternity. The trial court ordered Michael to pay temporary child support to Nicollet County, to be held in escrow pending final resolution. After the dissolution, Corrine was no longer represented by counsel, Michael continued to contest paternity, the County continued to seek child support from Michael, and Patrick and Jim Sullivan have denied their obligation to pay. Blood tests indicate that Michael cannot be the biological father of either child, that Patrick Sullivan has a high probability of being the biological father of B.B.R. and that Jim Sullivan has a high probability of being the biological father of D.P.R.

In 1989, Michael moved for partial summary judgment declaring that he had no duty of support to these two children. The trial court granted his motion, finding that "blood tests have conclusively shown that [Michael] is not the biological father of either of the children." The trial court concluded that Michael was entitled to summary judgment that he owed no support for those children. The trial court ordered that, upon expiration of any appeal, all amounts paid by Michael for temporary support be returned to him. Nicollet County immediately moved to amend the findings. The trial court refused on the grounds that findings were unnecessary and because it believed that if the case were appealed, the parties would be free to allege other facts to this court. Nicollet County appealed, but its appeal was dismissed as untimely.

After that appeal was dismissed, Michael sought an order that Nicollet County refund, with interest, the escrowed support he had paid and that it terminate further withholding. Nicollet County then sought an order denying Michael's motion "pending a final resolution of the matter herein," appointing a guardian ad litem to represent the minor children and requesting further blood testing to determine conclusively any paternity by Patrick or Jim Sullivan. Michael then moved for an award of attorney fees from Nicollet County.

Those three motions, heard July 24, 1989, give rise to the present appeal. On August 10, the trial court's order was filed granting Michael a refund of escrowed support and denying the motion to appoint a guardian ad litem. The trial court's memorandum reveals that the support payments were refunded because the County's appeal of the earlier partial summary judgment was unsuccessful. The trial court denied the motion for a guardian ad litem because it was not previously aware of the statutory requirement that a guardian be appointed.

The trial court denied Michael's motion for attorney fees stating that the request to appoint a guardian ad litem was valid because it was reasonable to assume that if the court had been aware of the relevant statute, a guardian would have been appointed and the court may have then reversed its decision regarding return of the support money.

Nicollet County then filed a timely notice of appeal from the order denying the motion for appointment of a guardian ad litem.

## ISSUE

Did the trial court err in denying Nicollet County's motion to appoint a guardian ad litem to represent the minor children?

## ANALYSIS

An appeal may be taken from an order which in effect determines the action and prevents a judgment from which an appeal might be taken. Minn.R.Civ.App.P. 103.-03(e). This order denying the motion for appointment of a guardian ad litem determines the action with respect to paternity and prevents a judgment. This court has discretionary authority to accept jurisdiction when we deem that the interests of justice so warrant. *Metropolitan Airports Commission v. Metropolitan Airports Police Federation*, 443 N.W.2d 519, 523 (Minn.1989). In our view, the interests of justice demand that we exercise this authority to review the decision in question.

This court may review any order affecting the order appealed and may review any

other matter as the interest of justice may require. Minn.R.Civ.App.P. 103.04. It would be a needless waste of judicial resources were we to review only the order appealed from or require this action to proceed to final adjudication twice; first without any guardian ad litem and then again with the children as parties. Thus, in the interests of justice and to avoid further delay, we take discretionary jurisdiction to review and decide the matter now. *Metropolitan Airports,* 443 N.W.2d at 523.

■ Minnesota adopted its version of the Uniform Parentage Act ("Act") in 1980. Minn.Stat. §§ 257.51–.74. A child *must* be made a party whenever the court considers an action to declare the nonexistence of the parent-child relationship and any child-party must have a guardian ad litem. Minn. Stat. § 257.60 (1988). This statute leaves the trial court no discretion. The trial court erred in refusing to appoint guardians ad litem to represent the minor children whose paternity is contested here.

Nicollet County cites this court's decision in *Johnson v. Hunter,* 435 N.W.2d 821 (Minn.Ct.App.1989), *pet. for rev. granted* (Minn. Apr. 24, 1989) for the proposition that a guardian ad litem must be appointed. The supreme court released its decision on review on November 9, 1989. That opinion guides our resolution of this appeal. *Johnson v. Hunter,* 447 N.W.2d 871 (Minn. 1989).

*Johnson* involved a paternity action brought by a daughter born out of wedlock whose mother initially had commenced a paternity action in 1969. The daughter was six months old at that time and was neither made a party nor represented by a guardian ad litem. (As noted, the Act, which requires that certain minor children be joined as parties represented by guardians, was adopted in 1980.) The action was continued several times, and when the matter finally came before the court, the mother failed to appear. The court dismissed the action with prejudice. In 1985, first the mother and then the daughter brought a new paternity action. The alleged father successfully challenged the action as

barred on res judicata grounds, because the issue had been previously decided between the same parties.

The court of appeals affirmed. After recognizing that allowing subsequent paternity actions brought by children who did not participate in initial actions would permit two, possibly inconsistent results, this court held that there was privity between the mother and the daughter in the initial action, which barred the later action on res judicata grounds. *Johnson,* 435 N.W.2d at 823–24.

The supreme court reversed, holding that the daughter was not barred on res judicata grounds because she was neither named as a party nor represented by a guardian ad litem in the initial action. The supreme court held that res judicata bars a second action by the mother or the county, because they were parties to the original action, but decided that the parent-child relationship is excluded from privity notions of res judicata. *Johnson,* 447 N.W.2d at 874. The supreme court noted that the Uniform Parentage Act, upon which Minnesota's paternity statutes are modeled, requires joinder and representation of children in all paternity proceedings, and declined to hold that the unrepresented child was privy to the action. *Id.* Finally, the supreme court noted that while the state's interests in paternity actions are primarily to prevent the child from becoming a public charge, the child's interests are much broader, including inheritance, medical support, causes of action, workers' compensation and veterans' benefit claims. *Id.* at 875.

Addressing the appellate court's concern for preventing two possibly inconsistent results in every paternity action, the supreme court held that unless a child's specific interests in paternity are addressed on the merits, a separate cause of action will be available to the child against the alleged father. *Id.* at 877.

We recognize that the trial court could not know, at the time of its ruling, the manner in which the supreme court would resolve similar issues in *Johnson.* The facts of these two cases, while analogous, differ in some respects. Johnson was born

out of wedlock but sought to establish paternity. By contrast, Michael was a presumed father who later sought to establish nonpaternity. However, the supreme court has clearly indicated the paramount importance to children of resolving paternity issues and we must apply those principles to protect the interests of these children.

 Michael was the presumptive father of the children, who were born during his marriage to Corrine. Minn.Stat. § 257.55, subd. 1(a). A presumptive father may rebut paternity. Minn.Stat. § 257.55, subd. 2. The issue must be raised no later than three years after the child's birth. Minn. Stat. § 257.57, subd. 1(b). The parties and the trial court disagreed about whether this provision was applicable to the older son, born in 1979, but there was no dispute it was applicable to the son born in 1981. This court has held the Act applicable to actions involving children born before 1980. *See, e.g., Pierce v. Pierce,* 374 N.W.2d 450, 452 (Minn.Ct.App.1985); *State ex rel. Ondracek v. Blohm,* 363 N.W.2d 113, 115 (Minn.Ct.App.1985). Moreover, application of this time limit to the birth of the younger child, but not to the older child, would create an absurd result which we presume the legislature did not intend. Minn.Stat. § 645.17(1) (1988).

 Therefore, because the Act clearly limits to a maximum of three the number of years in which a presumptive father may contest paternity and Michael's attempted rebuttal first raised the issue more than three years after the children were born, the statute of limitations will be available to a guardian to bar any further attempt by Michael to avoid presumptive paternity. This court's dismissal of the earlier appeal recognized that the partial judgment did not resolve all the issues between the parties. Because the children were not allowed to participate, no adjudication of nonpaternity could have been final against them. A presumptive father may not shed his paternal obligation so late or so easily.

The motion from which this appeal arises also sought to stay any refund to Michael of temporary support payments 'pending resolution of all the issues' in this case.

The trial court denied that motion. We may review that decision even though appellant did not raise it on appeal. Minn.R. Civ.App.P. 103.04. Because the trial court's memorandum reveals that its decision to refund support resulted from its failure to recognize the statutory duty to appoint a guardian ad litem, that decision is also reversed.

## DECISION

 The trial court erred in considering the attempt to declare the nonexistence of the presumptive parent-child relationship where the children were not named parties represented by guardians ad litem. The trial court erred in refusing to appoint guardians ad litem to represent the relevant children. The trial court erred in refusing to stay refund of support payments pending resolution of the paternity action.

Reversed.