**In re the Matter of STATE OF GEORGIA, ex rel., Mary A. BROOKS, Petitioner, Respondent,**

v.

**Kenneth BRASWELL, Appellant.**

**No. C4-90-570.**

Court of Appeals of Minnesota.

Sept. 11, 1990.

Review Granted Nov. 7, 1990.

Nancy L. Ponto, St. Paul, for appellant.

Tom Foley, Ramsey County Atty., Brad A. Johnson, Asst. Ramsey County Atty., St. Paul, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Myron Willard Orfield, Jr., Sp. Asst. Atty. Gen., St. Paul, for amicus curiae.

Considered and decided by NORTON, P.J., and GARDEBRING and KLAPHAKE, JJ.

## OPINION

GARDEBRING, Judge.

Appellant challenges the trial court's holding that Minn.Stat. § 257.57, subd. 1(b) (Supp.1989) violates the constitutional guarantees of equal protection under the federal constitution and the prohibition against special legislation in the Minnesota Constitution. We reverse and remand.

## FACTS

Appellant Kenneth Braswell and respondent Mary Brooks were married in Albany, Georgia, in October 1975. They moved to Texas in the spring of 1977. Within a few weeks, Brooks separated from Braswell and returned to Georgia. W.B. was born to Brooks in December 1977. The time at which Braswell knew of W.B.'s birth is disputed; however, it is clear he knew of the child's birth no later than 1981. A Georgia trial court dissolved the marriage in October 1978, reserving child support because Braswell was served notice of the dissolution by publication.

In 1987, Brooks began an action in Georgia under the Uniform Reciprocal Enforcement of Support Act. *See* Minn.Stat. § 518C.01–36 (1986). Jurisdiction was transferred to Ramsey County District Court. In turn, Braswell moved for an order compelling blood tests to determine the likelihood of paternity. The trial court denied his motion because the three year statute of limitations for actions to declare nonpaternity barred his claim. Minn.Stat.

§ 257.57, subd. 1(b) (1986).[1] The trial court ordered Braswell to pay $100 per month child support.

In 1989 the legislature amended the statute allowing challenges to paternity. The amended version extended the limitations period in cases like Braswell's to one year after the child reaches the age of majority and was applied retroactively to January 1, 1986. Minn.Stat. § 257.57, subd. 1(b) (Supp.1989).

On November 20, 1989, Braswell moved for a declaration of nonpaternity under the amended statute. Brooks challenged the constitutionality of the statute. The family court referee found the statute constitutional and ordered the parties to submit to blood tests. Brooks sought review of the referee's order. The trial court found section 257.57, subd. 1(b), violated the prohibition against special legislation in the Minnesota Constitution and the equal protection clause of the fourteenth amendment of the federal constitution. Accordingly, the trial court denied Braswell's request for a blood test and upheld the child support obligation.

Braswell appeals the trial court order finding the statute unconstitutional.

## ISSUES

1. Does Minn.Stat. § 257.57, subd. 1(b) (Supp.1989) violate the equal protection clause of the fourteenth amendment of the United States Constitution?

2. Does Minn.Stat. § 257.57, subd. 1(b) (Supp.1989) violate the Minnesota Constitution's prohibition against special legislation?

## ANALYSIS

Minn.Stat. § 257.57, subd. 1(b) (Supp. 1989) permits a presumed father to bring an action:

[w]ithin three years after the child's birth for the purpose of declaring the

1. Minn.Stat. § 257.57, subd. 1(b) (1986), provides that a presumed father may bring an action:

[f]or the purpose of declaring the nonexistence of the father and child relationship

* * * only if the action is brought within a reasonable time after the person bringing the action has obtained knowledge of relevant facts, but in no event later than three years after the child's birth.

nonexistence of the father and child relationship * * *. However, if the presumed father was divorced from the child's mother *after service by publication,* and, if, on or before the 280th day after the judgment and decree of divorce or dissolution became final, *he did not know that the child was born during the marriage* or within 280 days after the marriage was terminated, the action is not barred until one year after the child reaches the age of majority.

(Emphasis added.)[2]

Braswell argues that the trial court erred in holding that Minn.Stat. § 257.57, subd. 1(b) violates the federal constitutional guarantee of equal protection and the Minnesota constitutional prohibition of special legislation. We find his arguments convincing and therefore reverse the trial court.

■ Statutes are presumed constitutional. *In Re Tveten,* 402 N.W.2d 551, 556 (Minn.1987). Courts should declare a statute unconstitutional "only when absolutely necessary, and then with extreme caution." *Wegan v. Village of Lexington,* 309 N.W.2d 273, 279 (Minn.1981) (citation omitted). The statute must be shown to violate the constitution beyond a reasonable doubt. *Id.*

### I.

■ The trial court ruled that Minn.Stat. § 257.57, subd. 1(b) violates the equal protection clause of the United States Constitution. It concluded the statute creates a distinction based on legitimacy of birth. Because legitimacy is a quasi-suspect class, the trial court concluded the statute deserves an intermediate standard of review, i.e., it must be substantially related to a

legitimate governmental purpose. *Pickett v. Brown,* 462 U.S. 1, 8, 103 S.Ct. 2199, 2204, 76 L.Ed.2d 372 (1983). We disagree. The statute does not distinguish between legitimate and illegitimate children. Instead, the statute's classification is based on the manner presumed fathers are served notice of their marital dissolution. This distinction does not grant more favorable treatment to legitimate children than to illegitimate children. Thus, the intermediate standard of review is inappropriate.

■ Absent the presence of a suspect class or fundamental right, a statute receives the rational basis standard of review. *Essling v. Markman,* 335 N.W.2d 237, 239 (Minn.1983). Therefore, if section 257.57, subd. 1(b) fails to bear a rational relationship to a legitimate government purpose, then it violates the equal protection clause. In applying the rational basis standard, it is not this court's role to question the political wisdom of the judgments underlying enactment of the statute. *AFSCME Councils 6, 14, 65 & 96, AFL–CIO v. Sundquist,* 338 N.W.2d 560, 570 (Minn.1983).

■ Brooks contends there is no reasonable basis for distinguishing between presumed fathers served notice of their dissolution by publication and those personally served. Section 257.57 was designed to promote legitimacy. *Pierce v. Pierce,* 374 N.W.2d 450, 452 (Minn.App.1985), *pet. for rev. denied* (Minn. Nov. 9, 1985). Implicit in this purpose is the idea that the existence of a father and child relationship should be correctly determined. Correct determination of paternity requires that the presumed father know of the child's existence. It is evident, however, that service by publication creates a greater likelihood the presumed father may not receive

**2.** In 1990 the legislature again amended the statute at issue. The amended statute abandons the distinction between personal service and service by publication. It now permits a presumed father to bring an action to declare nonpaternity if he

was divorced from the child's mother and if, on or before the 280th day after the judgment and decree of divorce or dissolution became final, he did not know that the child was born during the marriage or within 280 days after

the marriage was terminated, the action is not barred until * * * one year after the presumed father knows or reasonably should have known of the birth of the child * * *. 1990 Minn.Laws ch. 568, art. 2, § 65, to be codified at Minn.Stat. § 257.57, subd. 1(b) (1990). The amendment is effective May 4, 1990, and applies to actions brought after January 1, 1986. Our decision does not address the application of the 1990 amendment to this case.

actual notice of the child's existence than when the father is personally served.[3] For this reason, the legislature extended the limitations period for presumed fathers served notice of dissolution by publication who were unaware of the child's existence at the time of the marriage dissolution. Accordingly, we hold that the extended limitations period is rationally related to the legitimate government purpose of correctly determining paternity.

We acknowledge that by basing the distinction upon method of service, the legislature failed to extend the limitations period for all presumed fathers who may be unaware of the child's existence.[4] Legislative reform, however, may be gradual, addressing the phase of the problem most acute to the legislature at the time. *Williamson v. Lee Optical,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955); *see Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981) (the legislature need not "strike at all evils at the same time or in the same way"). Therefore, the statute at issue does not violate the equal protection clause beyond a reasonable doubt.

## II.

■ The trial court also ruled that Minn. Stat. § 257.57 is special legislation in violation of article XII, section 1 of the Minnesota Constitution.[5] The constitutional prohibition does not prohibit the legislature from creating classes and applying different rules to different classes. *Tveten,* 402 N.W.2d at 558. If, however, the classification is so patently arbitrary so as to demon-strate constitutional evasion, the courts will void the enactment. *Id.* The classification will be constitutional if:

(a) the classification applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation; (b) the distinctions are not manifestly arbitrary or fanciful but are genuine and substantial so as to provide a natural and reasonable basis justifying the distinction; and (c) there is an evident connection between the distinctive needs peculiar to the class and the remedy or regulations therefor which the law purports to provide.

*Wichelman v. Messner,* 250 Minn. 88, 118, 83 N.W.2d 800, 824 (1957).

■ Two of Brooks' arguments warrant special attention. First, she argues that because Braswell and someone on his behalf lobbied the legislature to amend the statute, the subsequent amendment constitutes special legislation. We disagree. The amended statute does not only benefit Braswell; it applies uniformly to all presumed fathers served by publication and unaware of the child's existence. Therefore Brooks' claim is unpersuasive. Second, Brooks argues the statute is a law "authorizing the * * * legitimation of children." Minn.Const. art. XII, § 1. The statute, however, does not authorize the legitimation of children; instead, it permits an extended limitations period for actions to declare nonpaternity.

We therefore conclude the *Wichelman* factors are satisfied. First, the statute embraces all presumed fathers served by

---

**3.** When service by publication is made, petitioner files the dissolution petition with the trial court and attaches an affidavit stating respondent's whereabouts are unknown or he no longer lives in Minnesota. After court approval, petitioner publishes the summons for three weeks. Minn.R.Civ.P. 4.04(c); Minn.Stat. § 518.11 (1988). In contrast, when personal service is employed, respondent acquires knowledge that the dissolution proceedings have started and receives notice if petitioner claims she is pregnant or has issue from the marriage. Minn.Stat. § 518.10(e) (1988).

**4.** For example, if a presumed father is personally served three years and one day after the child's birth, he has no right to challenge paternity, even though he was unaware of the child's birth prior to service. In contrast, if the same man were served by publication, Minn.Stat.

§ 257.57, subd. 1(b) allows an extended limitations period.

**5.** Minn. Const. art. XII, § 1 provides:

In all cases when a general law can be made applicable, a special law shall not be enacted * * *. Whether a general law could have been made applicable in any case shall be judicially determined without regard to any legislative assertion on that subject. The legislature shall pass no local or special law * * * authorizing the adoption or legitimation of children; * * * conferring rights on minors; * * * granting to any private corporation, association, or individual any special or exclusive privilege * * *. The inhibitions of local or special laws in this section shall not prevent the passage of general laws on any of the subjects enumerated.

publication for whom the traditional limitations period may foreclose an action to declare nonpaternity. Second, the statute's distinction is not arbitrary. As mentioned above, presumed fathers served by publication are more likely to lose the opportunity to challenge paternity. For this reason the distinction between personal service and by publication is reasonably justified. Finally, the extended limitations period provides the opportunity for presumed fathers, initially unaware of the child's existence, to more certainly determine paternity.

Because we conclude that Minn.Stat. § 257.57, subd. 1(b) is constitutional, Braswell is entitled to move for a declaration of nonpaternity. On remand the trial court must appoint a guardian ad litem for W.B. *Reynolds v. Reynolds*, 454 N.W.2d 271, 274 (Minn.App.1990), *reversed on other grounds*, 458 N.W.2d 103 (Minn.1990).

## DECISION

The trial court erred in ruling that Minn. Stat. § 257.57, subd. 1(b) violates the equal protection clause of the federal constitution and the Minnesota Constitution's prohibition on special legislation. On remand a guardian ad litem must be appointed for W.B. We reverse and remand to the trial court for further proceedings.