Barbara J. **BENSON** and the County of Chisago, Petitioners, Respondents,

v.

Alan J. **HACKBARTH**, Appellant.

No. C3–91–1607.

Court of Appeals of Minnesota.

Feb. 25, 1992.

Review Denied April 27, 1992.

James T. Reuter, Chisago County Atty., Timothy T. Ryan, Asst. Chisago County Atty., Center City, for respondents.

Todd J. Kenyon, Patrick J. Neaton & Assoc., Wayzata, for appellant.

Lee V. Harpel, Rancourt Law Offices, Forest Lake, for guardian ad litem.

Considered and decided by LANSING, P.J., and HUSPENI and FLEMING,* JJ.

_____

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment

## OPINION

HUSPENI, Judge.

Appellant challenges the trial court's order for child support despite prior stipulated admission of paternity and payment of lump-sum. We reverse.

## FACTS

In 1979, respondent Barbara Jean Hagberg, n.k.a. Barbara Jean Benson ("Benson") gave birth to J.M.H. ("child"). In that same year, Benson and the Hennepin County Welfare Board commenced an action alleging that appellant Alan J. Hackbarth was the father of the child. The parties subsequently entered into a stipulation under which Hackbarth admitted paternity, agreed to reimburse the Hennepin County Welfare Department for confinement expenses, and agreed to pay Benson $1,000.00 "in complete satisfaction of all past, present, or future liability for support of this minor child." The trial court incorporated the stipulation into its order for judgment without further findings.

In March 1991, Benson and the County of Chisago brought an action to require Hackbarth to pay child support. This action was later amended to include a claim on behalf of the child. Hackbarth claimed that he had no obligation to provide support for the child under the terms of the 1979 order. The trial court found that since the child was not a party to the 1979 stipulation, she was not bound by the terms of the agreement and was free to bring a separate suit for support.

## ISSUE

Does a stipulated admission of paternity and lump-sum settlement in a paternity action preclude a later claim by a minor child for support?

## ANALYSIS

The trial court in this case applied the law to a set of undisputed facts; "[t]herefore, its conclusion was one of law and pursuant to Minn. Const. art. VI, § 2.

does not bind this court." *A.J. Chromy Constr. Co. v. Commercial Mechanical Servs., Inc.,* 260 N.W.2d 579, 582 (Minn. 1977).

At the time of the 1979 stipulation and order, Minnesota Statute section 257.28 directed:

> The commissioner of public welfare shall accept from the alleged, acknowledged, or adjudicated father of the child such sum as shall be approved by the court having jurisdiction of proceedings to establish the paternity of the child in *full settlement of all obligations for the care, maintenance, and education of such child* and hold or dispose of the same as ordered by the court. *Such settlement shall discharge the alleged, acknowledged, or adjudicated father of all further liability, civil and criminal,* on account of such child.

Minn.Stat. § 257.28 (1978) (repealed 1980 Minn. Laws ch. 589, § 38) (emphasis added).

■ Through section 257.28, the legislature "authorized a lump sum settlement and provided the father with a method of relieving himself of future liability, both civil and criminal." *State v. Sax,* 231 Minn. 1, 19, 42 N.W.2d 680, 690 (1950). Lump-sum payments are often used as an incentive to admission of paternity. *Nash v. Allen,* 392 N.W.2d 244, 248 (Minn.App. 1986), *pet. for rev. denied* (Minn. Oct. 22, 1986). In *Nash,* this court explained:

> Settlements by their very nature entail the give and take of conditions. If the court or opposing parties were unable to offer a more advantageous financial settlement as bargaining leverage, it is unlikely a purported father would ever acknowledge paternity when settling a law suit.

*Id.*

The terms of the 1979 stipulation were incorporated into the trial court's order,

and constitute a judgment of the merits. It is well established in Minnesota that:

> A judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is *conclusive* between parties and privies, not only as to every other matter which was actually litigated, but also *as to every matter which might have been litigated therein.*

*Mattsen v. Packman,* 358 N.W.2d 48, 49 (Minn.1984) (emphasis in original), *quoted in Helgeson v. Gisselbeck,* 375 N.W.2d 557, 559 (Minn.App.1985), *pet. for rev. denied* (Minn. Dec. 19, 1985).

All parties agree that the child was not a party to the 1979 stipulation and order. However, her present action for support will be barred nonetheless, if, in fact, she was in privity with one of the original parties. *See Helgeson,* 375 N.W.2d at 559.

■ In determining privity, the Minnesota Supreme Court has directed that "privity must be determined by the facts of each case." *Johnson v. Hunter,* 447 N.W.2d 871, 874 (Minn.1989). The court in *Johnson* concluded:

> Resolution of this issue turns on the relationship between [the child], [the mother] and the state under the paternity statute and the commonality of their interests.

*Id.*

■ Minnesota Statute section 257.60, enacted in 1980, provides that a child may be made a party to a paternity action and also provides for a guardian ad litem to be appointed for a child. However, in this case, as in *Johnson,* we must determine whether under the terms of the statute in effect prior to 1980 the child was in privity with parties to the original action.

The *Johnson* court, in applying the statute which is also at issue here,[1] determined

---

1. At the time of the 1979 action, section 257.33 provided:

   It shall be the duty of the commissioner of public welfare when notified of a woman who is delivered of an illegitimate child * * * *to take care that the interests of the child are safeguarded, that appropriate steps are taken to establish paternity, and that there is secured*

   *for him the nearest possible approximation to the care, support, and education that he would be entitled to if born of lawful marriage.* For the better accomplishment of these purposes the *commissioner of public welfare may initiate such legal or other action as is deemed necessary;* may make such provision for the care, maintenance, and education of the child

that the child was not in privity with parties to the original action. *Id.* at 876–77. Respondent urges this court to affirm the trial court's similar determination in this case. We will follow the mandate of *Johnson* that "privity must be determined by the facts of each case." *Id.* at 874.

In *Johnson*, a paternity action was dismissed with prejudice when the mother failed to appear at trial. *Id.* at 872. Apparently, she "want[ed] to drop everything" and was expecting settlement. *Id.* When the child brought a paternity action 16 years later, it was "dismissed based on res judicata after [the putative father] obtained an order nunc pro tunc reflecting the 1969 dismissal." *Id.* This court affirmed the dismissal, *Johnson v. Hunter*, 435 N.W.2d 821, 823–24 (Minn.App.1989); the supreme court reversed. *Johnson*, 447 N.W.2d at 877. Noting that even if mother originally acted on the child's behalf, the interests of the two were realigned when mother failed to appear at trial in 1969 and was removed from the 1985 action, the *Johnson* court stated:

> While the state's interest in paternity actions is primarily to prevent the child from "becom[ing] a public charge" by securing child support "[a] child's interests are much broader." For example, [child] points to several rights unique to her as a child, including: inheritance; medical support; causes of action; workers' compensation dependent's allowances; and veteran's education benefits. Unlike the state's interests, there may be psychological and emotional benefits to the child from an accurate establishment of paternity.
>
> \* \* \* \* \* \*
>
> Because [child] was not named as a party and was unrepresented in the 1969 action and because the issue of parentage has never been reached, it is difficult to say she had an adequate opportunity to be heard when her mother failed to appear for trial. At that point their interests

differed. \* \* \* [W]e now feel [that policies of finality and consistency] are outweighed in this context by the paramount interests of a child in an adjudication on the merits of paternity.

*Id.* at 875–76 (citations and footnote omitted). We conclude that the facts present here are distinguishable from those in *Johnson* and the concerns expressed by the *Johnson* court are not present in this case.

Unlike *Johnson*, barring the child's suit in this case will not deprive the child "of the basic right to establish parental relations." *Id.* at 876. Unlike the mother in *Johnson*, Benson initiated and fully pursued a paternity action against Hackbarth that resulted in his admission of paternity. The record does not suggest any reason why Benson would not pursue the most beneficial settlement available for her child. The legal, psychological and emotional benefits which concerned the *Johnson* court are fully available to the child in this case. We conclude that the facts of this case compel a determination that the child was in privity with Benson in the 1979 stipulation and order.

In addition, the Hennepin County Welfare Board was a party to the 1979 stipulation and order, and was directed to "take care that the interests of the child are safeguarded." Minn.Stat. § 257.33 (1978) (modified 1980 Minn. Laws ch. 589, § 31). Again we distinguish this case from *Johnson* in which the Minnesota Supreme Court concluded that the child's interests were not adequately represented by the Commissioner of Public Welfare where the paternity action was dismissed with prejudice for mother's failure to appear in court. *Johnson*, 447 N.W.2d at 875. Hackbarth's admission of paternity under the 1979 stipulation and order in this case provided the child with all the rights enumerated in *Johnson*. The only dispute is whether the Hennepin County Welfare Board adequately represented the child in securing an ade-

---

as the best interests of the child may from time to time require, and may offer his aid and protection in such ways as are found wise and expedient to the unmarried woman approaching motherhood.

Minn.Stat. § 257.33 (1978) (emphasis added) (modified 1980 Minn. Laws ch. 589, § 31).

quate settlement from Hackbarth. The *Johnson* court recognized that the state's primary interest in paternity actions is to secure an adequate settlement and "prevent the child from 'becom[ing] a public charge.'" *Id.* There is no indication on the record that the Hennepin County Welfare Board failed to properly pursue its primary interest.

We believe yet an additional concern would arise if the child is permitted to bring an action for support in this case. Hackbarth disputed paternity in 1979 and stipulated to paternity as a condition of the lump-sum settlement. If we permit the settlement to be avoided in regard to support, fundamental fairness would require that the settlement be set aside in regard to the admission of paternity also. The child could then bring a paternity action in her own name. In the event that action resulted in a determination of nonpaternity, the child would lose those legal, psychological and emotional benefits which are now hers under the stipulated settlement.

█ Finally, respondents contend that even if the child was in privity with Benson and the Hennepin County Welfare Board she should not be bound by the stipulation and order because section 257.28 unconstitutionally discriminates against children born out of wedlock, and violates the equal protection clause of the fourteenth amendment to the Constitution of the United States. We note initially that respondents did not file a notice of review. Therefore, the issue of the constitutionality of the statute is not properly before this court. *See* Minn.R.Civ.App.P. 106. Further, there is no indication in the trial court record or the record before this court that respondents notified the attorney general that the constitutionality of this statute was being challenged. The Minnesota Rules of Civil Procedure direct:

> When the constitutionality of an act of the legislature is drawn in question * * *

the party asserting the unconstitutionality of the act shall notify the attorney general thereof within such time as to afford the attorney general an opportunity to intervene.

Minn.R.Civ.P. 24.04; *see also* Minn.R.Civ. App.P. 144 (requiring similar notice to attorney general on appeal). The Minnesota Supreme Court has held, "In absence of compliance, we will not consider the constitutionality of a statute." *In Re Appeal of Leary,* 272 Minn. 34, 47, 136 N.W.2d 552, 560 (1965). Accordingly, we will not address respondents' constitutional challenge in this appeal.[2]

## DECISION

A child is barred from bringing a separate suit for support where alleged father has paid lump-sum settlement and child's interests were adequately represented in the settlement negotiations under Minn. Stat. § 257.28 (1978) (repealed 1980).

Reversed.

---

**2.** We note without comment that the Wisconsin Court of Appeals held that a statute which prevents modification of support only for illegitimate children "fails to bear an evident and substantial relation to its state interest." *In re B.W.S.,* 125 Wis.2d 212, 371 N.W.2d 379, 381 (App.1985) (declining to give full faith and credit to Michigan support judgment based on unconstitutionality of Michigan paternity statute), *aff'd sub. nom. In re Paternity of B.W.S.,* 131 Wis.2d 301, 388 N.W.2d 615 (1986).