Opinion
 

 ROTH, P. J.
 

 On June 18, 1970 Raul and Saul, twin brothers, were born at the Community Hospital of Los Angeles. Their birth certificates show that Maria Vera (Del Socorro Fernandez), the natural mother of the twins, declined to state the name of the father. However, separate certificates of baptism were issued by Our Lady Queen of Angels Church
 
 *925
 
 in Los Angeles on September 26, 1970, showing that Casimiro Perez was the father of Raul and Saul and Socorro Fernandez their mother.
 

 On August 2, 1973, Perez filed an action to establish paternity, naming the State of California, Department of Health, as respondent and alleging in addition to the facts set forth above that: he was the natural father of the twins; Maria died in Tijuana on March 9, 1973; he believed the twins were with their maternal grandmother, Esperanza Vera Colin “somewhere in Mexico;” and that the Department of Health had refused his request to amend the birth certificate to show he was the father of the twins.
 

 No person other than Department of Health of the State of California was named or served with the paternity action.
 

 On October 19, 1973, the State of California, Department of Health, appeared and filed a general denial.
 

 On January 7, 1974, the court entered a judgment which recited: appearance by respondent and the Attorney General; its consideration of the verified complaint and the exhibits consisting of certificates of birth and baptism; and the fact that Department of Health of the State of California had not opposed the action. The court then entered a judgment declaring Perez to be the natural father of the twins.
 

 On February 21, 1975, Perez caused the Sheriff of Los Angeles County to pick up the twins while they were in attendance at the Utah Elementary School, and they were delivered to the custody of Perez.
 

 On March 16, 1976, Colin, the maternal grandmother, and David Gonzalez Vera, the maternal uncle of the twins, moved to have the judgment of paternity entered on January 7, 1974, in favor of Perez set aside.
 

 The grounds of the motion were:
 

 (a) necessary and proper parties were not served with the paternity action;
 

 (b) the judgment was obtained by extrinsic fraud.
 

 
 *926
 
 The motion was denied.
 
 [1]
 

 The affidavits in support of the motion disclosed:
 

 Maria, the mother, lived with a man other than Perez for twelve months prior to the birth of the children; Maria told her brother and mother that she was pregnant by Gonzalez, the man she was living with; that Gonzalez was deported to Mexico; that she allegedly stated to her brother that Perez was not the father of the twins; that custody was awarded in Mexico to the grandmother after Maria’s death in 1973; and that the grandmother moved back to Los Angeles with the twins, and resided with them in the home of their maternal uncle, commencing in May 1973, three months before Perez filed his action and continued to reside with them at that address until the children were seized on February 21, 1975.
 

 No search was made by Perez for the children before he commenced his action and it is not disputed that Perez knew their maternal uncle and had known him since 1970.
 

 Perez does not dispute that the twins were living with Vera and Colin until he had the children forcibly removed from their custody.
 

 “We use the term ‘de facto parent’ to refer to that person who, on a day-to-day basis, assumes the role of parent, seeking to fulfill both the child’s physical needs and his psychological need for affection and care. (See Goldstein, Freud, & Solnit, Beyond the Best Interests of the Child (1973) p. 98.) We anticipate that juvenile courts will experience little difficulty in determining whether a person is a de facto parent for purposes of standing to appear in a juvenile court custody proceeding. The simple fact that a person cares enough to seek and undertake to participate goes far to suggest that the court would profit by hearing his views as to the child’s best interests; if the participant lacks a close relationship with the child, that fact will undoubtedly emerge during the
 
 *927
 
 proceedings.”
 
 (In re B. G.
 
 (1974) 11 Cal.3d 679, 692, fn. 18 [114 Cal.Rptr. 444, 523 P.2d 244].)
 

 The uncontradicted showing in the affidavits establishes that Vera and Colin were de facto parents. The trial court gave this fact limited recognition when it awarded visitation rights to Vera and Colin. We recognize that
 
 In re B. G.
 
 involved the question of custody while here the issue is paternity. However, upon a showing such as at bench there is eveiy reason to conclude that de facto parents are
 
 proper
 
 parties to paternity proceedings.
 

 As noted, the twins were not parties to Perez’ action. They are, however, indispensable parties as Civil Code, section 7008 makes clear: “The child shall be made a party to the action. If he is a minor he shall be represented by a guardian ad litem appointed by the court. The child’s mother or father may not represent the child as guardian or otherwise. The natural mother, each man presumed to be the father under Section 7004, and each man alleged to be the natural father may be made parties and shall be given notice of the action in the manner prescribed in Section 7018 and an opportunity to be heard. The court may align the parties.”
 

 Although Civil Code, section 7008, was not in effect when Perez’ action was pending, it appears to have codified decisional law on this subject. (E.g.,
 
 Van Buskirk
 
 v.
 
 Todd
 
 (1969) 269 Cal.App.2d 680, 685 [75 Cal.Rptr. 280].)
 

 The absence of indispensable parties deprives the court of jurisdiction, and a judgment entered under such circumstances is void.
 
 (Bank of California
 
 v.
 
 Superior Court
 
 (1940) 16 Cal.2d 516, 522 [106 P.2d 879].) Furthermore, no attempt was made to bring into the paternity proceedings either Colin or Vera under circumstances strongly suggestive of fraud.
 

 The order denying the motion to vacate the judgment is reversed and the cause is remanded with directions to hear and determine the questions of paternity and custody in accordance with the principles expressed herein.
 

 Fleming, J., and Beach, J., concurred.
 

 [1]
 

 The order in its entirety was:
 

 “Visitation rights of the grandmother are as follows: Alternate weekends' from Friday 5 pm to Sunday 5' pm commencing March 26, 1976 and continuing until further order of court. The grandmother is restrained from removing the minor children outside the County of Los Angeles. The grandmother shall have the right to have the minor children up to 1 full month in the summer upon 60 days written notice to the father prior to the months’ visitation.
 

 “Both parties are restrained from annoying, molesting or haarssing [j/c] the other in any manner whatsoever; from making any derogatory remarks concerning the other to or in the presence of the minor children or either of them.”