[No. C016683. Third Dist. Feb. 3, 1995.]

COUNTY OF SHASTA, Plaintiff and Appellant, v.
TIMOTHY LEO CARUTHERS, Defendant and Respondent.

### Counsel

Daniel E. Lungren, Attorney General, Roderick E.Walston, Chief Assistant Attorney General, Carol Ann White and Mary Jane Hamilton, Deputy Attorneys General for Plaintiff and Appellant.

Suzy C. Moore and Frank S. Moore for Defendant and Respondent.

### Opinion

**PUGLIA, P. J.**—This appeal presents the question whether an alleged father can "buy out" his duty to support his minor child by a "settlement" with the child's mother. Defendant, the alleged father, paid Regina Todrzak, the mother, $15,000 in consideration for which Regina signed a covenant not to sue and dismissed with prejudice her pending paternity action against defendant.

This appeal is from the judgment in a later action against defendant brought by the Shasta County District Attorney (plaintiff) on behalf of the minor child, Savannah, to establish defendant's paternity and obtain an order for child support payable through the district attorney's office. (Fam. Code, § 4002; Welf. & Inst. Code, § 11350.1, 11475.1 [see also former Civ. Code, §§ 196a, 248; Stats. 1992, ch. 162, § 2].) Defendant answered and, alleging the previous settlement and dismissal with prejudice, pleaded collateral estoppel, i.e., "issue preclusion" as an affirmative defense. Thereafter, defendant's motion for summary judgment, based on issue preclusion, was granted by the trial court. Plaintiff appeals from the ensuing judgment. We shall reverse.

California law provides that every child has a right to support from both parents. (Fam. Code, §§ 3900, 3901 [former Civ. Code, §§ 196, 196a, 242].) A child has rights independent of its mother, including the right to establish a parent-child relationship with its father and to enforce the father's duty of support. (Fam. Code, §§ 4000, 7600 et seq. [former Civ. Code, §§ 196a, 7000 et seq.].) The trial court's ruling that the underlying action is barred by the settlement and judgment of dismissal in the earlier action between Regina and defendant is contrary to California law prohibiting a parent or guardian from unilaterally compromising a child's right to parental support. (*Everett* v. *Everett* (1976) 57 Cal.App.3d 65, 69 [129 Cal.Rptr. 8] [hereafter *Everett*]; *Fernandez* v. *Aburrea* (1919) 42 Cal.App. 131, 132 [183 P. 366]; see also *Straub* v. *B.M.T. by Todd* (Ind.Ct.App. 1993) 626 N.E.2d 848, 852.) Moreover, the trial court's order conflicts with Savannah's due process right to a full and fair opportunity to establish that defendant is in fact her father, an issue left unresolved by the settlement and dismissal with prejudice in Regina's action. (See Fam. Code, § 7570, subd. (a) [former Evid. Code, § 621.1] ["There is a compelling state interest in establishing paternity for all children."]; see also *Ruddock* v. *Ohls* (1979) 91 Cal.App.3d 271, 277-278 [154 Cal.Rptr. 87] [the establishment of the parent-child relationship is the most fundamental right a child possesses].)

Savannah was born on November 28, 1986. At the time of Savannah's birth, Regina was married to, but separated from, Frank Upton.

In March 1987, Regina filed an action against defendant in Los Angeles County Superior Court (the Los Angeles action) pursuant to the Uniform Parentage Act. (Fam. Code, § 7600 et seq. [former Civ. Code, § 7000 et seq.].) Defendant answered and denied paternity and the duty to support. Defendant alleged Upton was the father of Savannah and, in any event, Regina had engaged in intercourse with unknown others "between June 1, 1985 and June 1, 1986 . . . ." The Los Angeles Superior Court directed defendant to pay support pendente lite in the amount of $100 per month.

Both Regina and defendant were represented by counsel. In April 1990, defendant informed his attorney that he and Regina had opened negotiations to settle the action. In August 1990, Regina released her attorney and substituted herself in propria persona. Regina and defendant signed a seven-page document drawn up by defendant's attorney entitled "Mutual General Release and Settlement Agreement" (the agreement). In the agreement defendant promised to pay Regina $15,000, $10,000 to be paid immediately and $1,000 each year thereafter for five years beginning in August 1991. In return, Regina promised to dismiss her paternity suit with prejudice and not to refile the action.[1] The issue of paternity was left unresolved by the settlement agreement.

Regina received a check for $10,000 together with a letter from defendant's counsel reciting the parties' agreement that "upon timely payment of the balance, the case would be closed and all rights terminated." In September 1990, Regina filed a request for dismissal with prejudice and judgment was entered accordingly. In July 1991, Regina received a $1,000 payment from defendant.

The action underlying this appeal was filed in June 1992 following Regina's request to plaintiff district attorney for child support services. Regina named defendant as Savannah's father on a confidential form she was required to complete by plaintiff's family support division. Regina claimed she had not had sexual relations with anyone other than defendant during the period when Savannah was conceived.

Defendant demurred to the complaint on the ground plaintiff lacked standing to bring the action because of the dismissal with prejudice of the Los Angeles action. The trial court overruled the demurrer without prejudice to defendant's right to raise the issue in his answer.

Defendant answered, denied paternity and the duty to support and pleaded collateral estoppel as an affirmative defense. Defendant then moved for summary judgment, contending "the doctrine of collateral estoppel precludes relitigation of the paternity issue" and plaintiff "lacks standing to establish paternity . . . ." Defendant argued Savannah is the real party in interest in both of the actions to establish paternity and support and, as representative plaintiffs, Regina and plaintiff are in privity.

In granting defendant summary judgment, the trial court concluded the Los Angeles action and the underlying action present the identical issue of

---

[1]The agreement states in relevant part: "[Regina] agrees to execute a dismissal with prejudice in this case and acknowledge [sic] that she cannot ever open this case or seek to establish paternity from [defendant] in any manner whatsoever."

paternity, and because the Los Angeles action was dismissed with prejudice, plaintiff is precluded from prosecuting this paternity/support action on behalf of Savannah.

■ We first address defendant's contention the underlying action is precluded by the dismissal with prejudice. Generally collateral estoppel precludes relitigation of an issue that has been litigated in a prior action between the same parties on a different cause of action. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 193, pp. 627-628.) The doctrine has no application here, because the issue of paternity was not litigated or determined in the Los Angeles action.

Collateral estoppel is simply one aspect of the doctrine of res judicata, which operates to bar a second action on the same cause of action between the same parties. (*Ruddock* v. *Ohls, supra*, 91 Cal.App.3d at p. 279 [hereafter *Ruddock*].) Res judicata does not apply here because Regina and the district attorney are different parties and there is no privity between them. Moreover, as to the Los Angeles action, there was no privity between Regina and Savannah because the interests of the child and her unwed mother were not identical. (See *Johnson* v. *Hunter* (Minn. 1989) 447 N.W.2d 871, 874 and authorities cited therein; *In re Parentage of Mayberry* (1991) 222 Ill.App.3d 1008 [165 Ill.Dec. 354, 584 N.E.2d 533, 535].) In any event, "[t]he parent-child relationship . . . is traditionally excluded from privity notions for res judicata purposes." (*Johnson* v. *Hunter, supra*, 447 N.W.2d at p. 874.)

More importantly, Savannah was not a party to the Los Angeles action and thus her interests were not fully protected and considered there. As a result, she did not have a full and fair opportunity to litigate the issue of paternity in that action. Accordingly, Savannah is not bound by the dismissal with prejudice. (Cf. *Johnson* v. *Hunter, supra*, 447 N.W.2d at p. 876 ["The opportunity to be heard in a prior action [] is an underlying policy reason allowing the application of res judicata."]; *In re Parentage of Mayberry, supra*, 584 N.E.2d at p. 535.)

Regina brought the prior paternity action against defendant in her own name, pursuant to the Uniform Parentage Act (UPA) (Fam. Code, § 7600 et seq. [former Civ. Code, § 7000 et seq.].) Family Code section 7635, subdivision (a) (former Civil Code section 7008) provides: "The child may, if under the age of 12 years, and shall, if 12 years of age or older, be made a party to the action. If the child is a minor and a party to the action, the child shall be represented by a guardian ad litem appointed by the court. . . ."

Savannah was not a party to the Los Angeles action. Had she been, a guardian ad litem would have been required to be appointed for Savannah.

(Fam. Code, § 7635, subd. (a).) More importantly, the guardian ad litem would not have been authorized to settle or compromise a claim on behalf of Savannah without court approval. (Code Civ. Proc., § 372; Fam. Code, § 6601; Prob. Code, § 3500, subds. (a), (b).) Because Savannah was not named as a party and was unrepresented in the Los Angeles action, and because the issue of parentage has never been litigated, it is obvious Savannah has not had any opportunity, let alone an adequate opportunity, to be heard regarding her claim of paternity. (Cf. *Johnson* v. *Hunter, supra,* 447 N.W.2d at p. 876.) Accordingly, her rights cannot now be limited or diminished by the dismissal with prejudice of the Los Angeles action. (See *Ernest P.* v. *Superior Court* (1980) 111 Cal.App.3d 234, 240 [168 Cal.Rptr. 438]; *Everett, supra,* 57 Cal.App.3d at pp. 69-71.)

Defendant notes Family Code section 7635 as originally enacted required that all minors be joined in an action to establish paternity under the UPA. (See former Civ. Code, § 7008, enacted Stats. 1975, ch. 1244, § 11, p. 3199.) However, this section was amended in 1977, and since then has provided that only children over the age of 12 must be made parties to the action. For children under 12, joinder in the action is discretionary. (Fam. Code, § 7635, subd. (a); see former Civ. Code, § 7008, amended by Stats. 1977, ch. 207, § 1, p. 729.)

At defendant's request, we take judicial notice of the legislative history of the 1977 amendment. (Evid. Code, § 459, subd. (d).) Defendant claims the legislative history shows the effect of the amendment is twofold: (1) if the mother joins a child under age 12 in the action, a guardian ad litem must be appointed for the child and no settlement or compromise of the child's claim can be made without court approval; or (2) the mother, in her discretion, may decide not to join a child under age 12 in the action, and thus bring the action in her name only; since no guardian ad litem need be appointed, the mother has the unfettered right to settle or compromise the action without court approval, and any such disposition forever bars any subsequent action on behalf of the child to establish paternity and the right to support.

Our understanding of the amendment's effect differs from defendant's. Neither Family Code section 7635 nor the legislative history of the 1977 amendment to its predecessor (former Civ. Code, § 7008) supports defendant's interpretation. Family Code section 7635 provides that a minor child under age 12 may be joined in an action to establish paternity under the UPA. Nothing contained in section 7635 or the legislative history suggests a child who is not so joined would thereafter forever be barred by, as here, a dismissal with prejudice of a paternity action brought by the mother and against the alleged father. "[T]he establishment of the parent-child relationship is the most fundamental right a child possesses to be equated in

importance with personal liberty and the most basic of constitutional rights." (*Ruddock, supra,* 91 Cal.App.3d at pp. 277-278.) Even assuming the Legislature were competent to erect a statutory bar against the child, there is nothing in Family Code section 7635 which suggests the Legislature intended to empower the mother to obliterate her child's fundamental rights simply by failing to join the child in an action to establish the child's paternity. Although a decree in a paternity action prosecuted by the mother in her name only presumptively binds the mother and the alleged father reciprocally, we hold it does not foreclose a nonparty child from prosecuting an action to establish paternity against the alleged father in his or her own right.

The legislative history of the 1977 amendment to the predecessor section to Family Code section 7635 is not inconsistent with our conclusion. According to a report of the Senate Committee on Judiciary:

"The Uniform Parentage Act (UPA) specifies procedures for determining the existence of a father-and-child relationship. It requires that the child be made a party to such an action, and prohibits either parent from representing the child as guardian. . . .

". . . . . . . . . . . . . . . . . . . . . . . .

"[T]his bill would *require* a child to be made a party in such proceedings *only* if he is 12 years of age or older, and would merely *permit* such child to be made a party if he is under 12 years of age. [Original italics.]

"This would be consistent with existing law which requires that a child over the age of 12 years *consent* to his adoption . . . . [Original italics.]

"WHAT IS THE PURPOSE OF NOT REQUIRING THAT A CHILD UNDER 12 YEARS OF AGE BE MADE A PARTY?

"[T]his bill would delete the provision in existing law which prohibits a mother or a father from acting as guardian or otherwise in such an action.

"*In any case, the court would still have to grant a petition for anyone, including a mother or a father, to be a minor's guardian ad litem.*" (Italics added.)

Thus the Legislature recognized there were parentage cases in which a minor under 12 would have to be joined as a party; moreover, by authorizing a parent to act as guardian ad litem, the Legislature contemplated that a

parent undertaking to act in the minor's interest would act not simply in an informal representative capacity but as a properly appointed guardian ad litem. Certainly there is nothing in the quoted history indicating a legislative design to vest unfettered, dispositive control of fundamental rights personal to the minor in the minor's parent.

Defendant cites *Ruddock, supra*, 91 Cal.App.3d 271, in support of his claim a mother may proceed in an action against the alleged father in her name only and bind the child by the resulting judgment. *Ruddock* held that an Oregon divorce decree containing a finding of nonpaternity for a child born out of wedlock did not preclude the mother's subsequent paternity/support action brought on behalf of the minor. The court first noted the child was not a party to the divorce proceeding. Equally important, according to the court, was that a mother and child do not always have the same interests in such a proceeding.[2] The *Ruddock* court held: "[I]n dealing with the prospective rights of a minor child to establish paternity, the child, if not formally a party, is not bound by a paternity determination in a *marital dissolution* action." (91 Cal.App.3d at p. 278, italics added.) However, in dicta the court then noted, "[i]n contrast, in an action . . . under the Uniform Parentage Act [citation] formally brought on behalf of the child, the judgment may be shown to be binding without actual joinder if the mother acted in a proper representative capacity." (*Id.*, at p. 285.)

Nevertheless, the mother and child do not always have identical interests when the issue of paternity is raised outside a dissolution action. "The unwed mother and the child have different interests and obstacles in filing a paternity suit even though the child's birth is a shared event. [Citations.] While the child may be concerned with monies for support, health and education, an unwed mother may be concerned with a desire to maintain independence and avoid public disapproval." (*In re Parentage of Mayberry, supra*, 584 N.E.2d at p. 535.) There may also be psychological and emotional benefits to the child from an establishment of paternity. (*Johnson* v.

[2]In this regard the *Ruddock* court commented: "Considering present-day realities, not every question of paternity raised and decided in a marital dissolution action involves a full adversary hearing on the subject. It is not uncommon for such an issue raised in the pleadings to be decided pro forma because the mother is reticent to be subjected to scrutiny about past dalliances. The emotional experience and psychological trauma of having one's personal life unveiled can act as a deterrent. Guilt feelings over the dissolution, favorable concessions on support or property can influence the vigor with which the paternity question is presented to the court. [Citation.] The availability of aid to families with dependent children (AFDC) may relieve the financial motivation for energetic pursuit of the responsible father. Lastly, the mother may have ambivalent feelings about having the child tied to a past relationship or about having to deal with the father on visitation and support. These considerations would require a review of the record to determine whether the mother acted in a proper representative capacity and while not requiring a reweighing of the evidence, would nevertheless be a form of collateral attack." (91 Cal.App.3d at p. 278.)

*Hunter, supra*, 447 N.W.2d at p. 875.) Another court has observed: "[T]he interests of children are not necessarily the same as those of their mother. [Citation.] Although securing support and education expenses for children is the primary purpose of a paternity action, the interests of the children are not limited to child support. [Citation.] . . . 'A child born out of wedlock who establishes paternity in a timely fashion has certain rights to inherit from the father [citation], as well as certain rights to claim other economic benefits upon the death of the father. [Citation.] These rights, in addition to the right to receive child support, are of constitutional dimensions and are entitled to protection under the equal protection clause of the United States Constitution. [Citation.]' " (*Straub* v. *B.M.T. by Todd, supra*, 626 N.E.2d at p. 851.)

In fact, we question whether a child's best interests can ever be adequately represented if the child is not a party to the action. By joining the child, the appointment of a guardian ad item becomes a legal necessity. (Fam. Code, § 7635, subd. (a) [former Civ. Code, § 7008].) Once a guardian ad litem is appointed, the action may not thereafter be compromised, settled or dismissed without court approval, thus insuring the interests of the child have been fully and fairly considered. (Code Civ. Proc., § 372; Fam. Code, § 6601; Prob. Code, § 3500.)[3]

Even though Family Code section 7635 does not mandate a child under 12 be made a party to an action to establish paternity, it does not logically follow that it therefore authorizes the child's mother to compromise or foreclose the right of the child to establish paternity and prospectively to obtain support simply by prosecuting a paternity action in her own name without joining the minor as a party. "To bind the child by the discretion or indiscretion, as the case may be, of the mother in choosing counsel or trial tactics . . . without formal joinder, is to confer upon the mother the right to determine a child's most fundamental right next to life itself." (*Ruddock, supra*, 91 Cal.App.3d at p. 278.)

The relevant case law, although not directly on point, supports our conclusion. In Everett, *supra*, 57 Cal.App.3d 65, the mother's prior action for child support resulted in a judgment declaring defendant not the father of plaintiff's minor son. The *Everett* court held the judgment was not res judicata in a subsequent paternity action brought by the minor through his guardian ad litem. The court based its decision on the fact that although the

---

[3]In any event, it is obvious from the record Savannah's interests were not represented or considered in the Los Angeles action, i.e., Regina was not acting "in a proper representative capacity." (*Ruddock, supra*, 91 Cal.App.3d at p. 285.) That Savannah's interests were not even considered appears from the terms of the settlement which left the issue of paternity unresolved and gave Regina the unrestricted use of the $15,000 she received in consideration for dismissing her action with prejudice.

mother had a right to file the prior action in her own name, the child was the real party in interest and under former Probate Code section 1431 (now Prob. Code, § 3500), the child's claim could not be compromised without court approval. The child, through his guardian ad litem, claimed the judgment in the first action was the product of collusion between the child's mother and defendant induced by a settlement between the parties which was not approved by the court. (57 Cal.App.3d at pp. 67-68.)

The *Everett* court stated: "The prior action brought by plaintiff's mother against defendant was not res judicata on the issue whether defendant is plaintiff's father.

"Although the parent may file an action for support in her own name under [Civil Code] section 196a, the child is the real party in interest in an action to establish paternity and obtain support. [Citations.] However, it 'is settled law in this state that a minor's right to support and maintenance by his father may not be limited or contracted away by his parents.' [Citations.]

"Probate Code section 1431 provides that when a minor has a disputed claim for damages, money or other property against a third person, any compromise of that claim to be valid must be approved by the court. Such approval is required where the minor's representative enters into a stipulation which involves the waiver of any material right of the minor. [Citations.]

"Although, as defendant points out, the trial court did enter judgment in his favor in the previous action, the face of the judgment indicates a stipulation involving the substantial rights of the minor [citation] that was not submitted to the court for its approval. [Citation.] In brief, the compromise judgment 'although valid between the parties, had not been approved by the court and was therefore not binding upon the minor.' [Citation.]" (57 Cal.App.3d at pp. 68-69, fns. omitted.)

The *Everett* court cited with approval *Berry v. Chaplain* (1946) 74 Cal.App.2d 652 [169 P.2d 442], wherein the court held invalid a stipulation in an action brought by a guardian ad litem because the court had not approved it as required by then Probate Code section 1431.

Although *Everett* preceded the UPA, the court was prescient in concluding that issues of paternity and the right to support cannot be foreclosed by a mother who sues in her own name only and then settles or compromises the action without court approval: "It cannot be the law that if the mother decides to proceed in the name of the child through a guardian, the interests

of the child are protected . . . but that if she sues in her own name, she may compromise the claim of the child without judicial inquiry into the question of whether the compromise is 'improvidently made . . . [or] prejudicial to the rights and interests of the minor.' [Citation.]" (*Everett, supra,* 57 Cal.App.3d at p. 71.)

■ Having determined the dismissal with prejudice does not bar the underlying action, we address defendant's claim it is precluded by the settlement with Regina. It has long been the law in this state that a minor's right to support and maintenance by its father may not be limited or contracted away by the parents. (*Everett, supra,* 57 Cal.App.3d at p. 69; *Fernandez* v. *Aburrea, supra,* 42 Cal.App. 131, 132.) California's adoption of the UPA codified this principle, stating a mother and alleged father may not compromise the rights of the child. Thus, Family Code section 7632 (former Civ. Code, § 7006, subd. (e)), provides that any private agreement between a mother and an alleged father, "regardless of its terms," does not bar a paternity action under the UPA.

The UPA protects the child's right to establish paternity and obtain support from its natural father against foreclosure by the mother's unilateral acts. Whatever the intention of the agreement between Regina and defendant, it could not foreclose Savannah's right to establish paternity in her own action. (See *Everett, supra,* 57 Cal.App.3d at p. 71, fn. 9 [Noting that under the UPA, "[i]mprovident agreements [between the alleged father and the mother] provide no defense . . . ."].)

Our decision is both obvious and necessary. ■ "[T]he establishment of the parent-child relationship is the most fundamental right a child possesses to be equated in importance with personal liberty and the most basic of constitutional rights." (*Ruddock, supra,* 91 Cal.App.3d at pp. 277-278.) ■ The duty to support one's child is one of the oldest provisions of California law. (See Fam. Code, §§ 3900, 3901 [former Civ. Code, §§ 206, 242, 248].) California assigns to both the father and the mother of any child an equal and continuing responsibility to support their child. (Fam. Code, § 3900 [former Civ. Code, §§ 196, 196a, 242].)

The California statutes collectively manifest this state's commitment to protect the rights of any child, whether born in or out of wedlock, to establish parentage and to enforce the duty of both parents to support that child. (See Fam. Code, § 7570, subd. (a).) These fundamental rights cannot be foreclosed by a prior action in which the interests of the child, not a party thereto, were not represented.

The judgment is reversed and the matter remanded with directions to the trial court to vacate its order granting defendant's motion for summary

judgment, to deny the same and to proceed thereafter in accordance with the views expressed herein. Plaintiff is to recover its costs on appeal.

Sims, J., and Davis, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 25, 1995.