Filed 1/22/14  J.J. v. E.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| J.J., | |
| Petitioner, | E056988 |
| v. | (Super.Ct.No. HED017064) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| E.C., et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Irma Poole Asberry, Judge.  Petition granted.

Law Offices of Toby Bowler and Toby Bowler; Tenner Johnson, LLP and J. Craig Johnson, attorneys for Petitioner.

No appearance by Respondent.

A.T., in pro. per., for Real Party in Interest.

1

This case must be one of the saddest ever to come before this court. The child real party in this matter, E.C., once had two fathers who were either financially and/or emotionally willing to support her. Now she has none, although both men are still alive and theoretically available to assume those responsibilities.

The record before us does not contain a complete record of the various proceedings in which the parties have been embroiled over the years, and to a considerable extent, we are indebted to a careful summation prepared by the trial court in June 2010, the accuracy of which we presume will not be disputed.

The formal petitioner below is E.C., a minor, who was born in September 2000. At the time of the birth her mother, A.T. (Mother), was married to, but separated from, P.C. However, P.C. and Mother were cohabiting at the time the minor was conceived, so that the semi-conclusive presumption of Family Code[1] section 7540 applied to P.C. The minor's biological father, however, is J.J., petitioner in this proceeding and respondent below. J.J. does not dispute this, and his paternity was in fact confirmed by private DNA testing performed shortly after E.C.'s birth.

In March 2001, Mother instigated a support action through the district attorney for the formal establishment of paternity and support. This led to negotiations between J.J. and Mother and eventually a support agreement. In this agreement J.J. admitted paternity "[f]or purposes of this agreement" and agreed to pay $625 per month for E.C.'s support,

_____

[1] All further statutory references are to the Family Code unless otherwise indicated.

subject to cost of living increases. The agreement also provided for contact between J.J. and E.C. at the latter's request once she reached the age of 12. The agreement included a confidentiality agreement prohibiting any discussion of E.C.'s paternity with others.

Meanwhile, P.C. had filed a dissolution action that was eventually settled by stipulation and order on April 29, 2002. This petition and order listed only Mother's two older children as children of the marriage.

It appears that at this time, or shortly thereafter, Mother became dissatisfied with the amount of support provided in the agreement. As our opinion in a previous case involving Mother and J.J. recites, Mother breached the confidentiality agreement by, inter alia, contacting J.J.'s elderly and ailing mother and informing her of E.C.'s existence. (See *Claudio v. Johnson* (Mar. 8, 2007, E039609) [nonpub. opn.].) Mother also threatened to bring E.C. to J.J.'s office[2] or home, and to publicize the relationship by any means possible, including newspaper advertisements. Mother also demanded that J.J. purchase a home for her; he declined. She then retained counsel to assist her in obtaining more child support.[3]

At first J.J.'s attorney (then Toby Bowler) was cooperative, but once he realized that Mother had been married to P.C. at the time E.C. was conceived, matters changed. Bowler advised J.J. that because Mother had breached the confidentiality provisions of

---

[2] J.J. is an attorney.

[3] By that time J.J.'s monthly payments were $850.

3

the support agreement, he could consider the agreement terminated. J.J. therefore stopped paying support for E.C. in October 2002.

Mother then filed a paternity action in her own name against J.J., seeking a judgment that he was E.C.'s legal father. E.C. was not formally made a party to this matter. Most of the proceedings in that matter are not relevant,[4] but it resulted in a "judgment of non-paternity" entered on February 10, 2005. This judgment found that the conclusive presumption of section 7540 applied and that P.C. was E.C.'s legal father and that he had held the child out as his daughter after her birth. The judgment also recited that no request for genetic testing had been made within two years of the child's birth, as required by section 7541,[5] and that "there is not a parent-child relationship in existence between [J.J.] and [E.C.]. . . ." This judgment duly became final.

Mother's next step was to file an action for breach of contract and fraud, acting as guardian ad litem for E.C.—a status she had not sought with respect to the paternity action. This case came to this court when J.J. appealed the trial court's denial of his special "anti-SLAPP" motion to strike a cause of action for "promissory fraud." (Code Civ. Proc., § 425.16.) We found that Mother had presented insufficient evidence that J.J.

---

[4] Apparently J.J. filed a motion to join P.C., but at a later hearing both he and Mother stipulated that the presence of P.C's attorney was not required, thereby apparently abandoning the attempt.

[5] Section 7541, subdivision (b) allows the conclusive presumption of the preceding statute to be challenged by genetic/DNA testing, but "[t]he notice of motion for blood tests under this section may be filed not later than two years from the child's date of birth by the husband. . . ."

had harbored a secret intent not to perform his obligations when he entered into the support agreement, and directed that J.J.'s motion be granted as to that cause of action. It appears that Mother was similarly unsuccessful with the remainder of the action, as then Commissioner Asberry noted below that J.J.'s motion for summary judgment was granted.

Mother then[6] filed a motion to set aside the nonpaternity judgment. This motion was heard and denied in April 2009.

The case now before us was filed by E.C. in her own name on June 23, 2009, to establish paternity and obtain related relief. Mother was later joined as a party and apparently also appointed as guardian ad litem. The instant petition involves J.J.'s motion for summary judgment, which was based on the 2005 judgment of nonpaternity.[7] The issue on which we decide the case is whether E.C., who was not a formal party to the original paternity action, is bound by that judgment. We determine that she is.[8]

---

[6] In fact, there were intervening proceedings in the dissolution action between Mother and P.C., although the import cannot be ascertained from this record.

[7] The motion also argued the conclusive presumption and policy factors, but we find the effect of the previous judgment to be dispositive. Hence, we have no further need to consider the support agreement and surrounding circumstances or the relationship *vel non* of P.C. to E.C. after her birth. Nor do we consider Mother's arguments as to J.J.'s moral obligation.

[8] The dissent complains that the result leaves the minor with no father. Not so—it appears indisputable that P.C. is the legal father and could be legally pursued to establish this. Mother just refuses to do so.

DISCUSSION

First, to address one point repeatedly argued, we need not, and do not, decide whether P.C. is bound by the judgment. As best we can determine, he was not formally joined as a party in that action, although it is clear that he was aware of it. However, his personal interest in avoiding financial responsibility for E.C. was apparently aligned with those of Mother as she prosecuted the case against J.J., and arguably P.C. could be found in privity with Mother and thus bound through the doctrine of collateral estoppel. (See, e.g., *Mooney v. Caspari* (2006) 138 Cal.App.4th 704, 716-717.) And even if P.C. is not bound by the judgment, we have been unable to ascertain any reason why the result would be any different in a direct paternity action against P.C. However, as we have said, these issues are not before us.

As we have described, Mother brought the original paternity action against J.J. in her own name, without joining E.C. Section 7635, subdivision (a) makes joinder of the child *optional* if the child is under the age of 12, so there was no requirement that E.C. formally have been made a party. Although it was formerly held that the child was an indispensable party to a paternity action (see *Perez v. Department of Health* (1977) 71 Cal.App.3d 923, 927, citing Civ. Code, former § 7008), that is simply no longer the case.[9] Instead, the Legislature seems to have accepted the common sense proposition

---

[9] Civil Code former section 7008 did require that the child be made a party to a paternity action, but it was amended to make this discretionary for younger children. Section 7635 derives from Civil Code former section 7008. The amendment thus directly altered prior law in this respect.

6

that a mother may generally be trusted to represent her child's best interests in prosecuting a paternity action. (See *Ruddock v. Ohls* (1979) 91 Cal.App.3d 271, 277 (*Ruddock*).) This conclusion is further buttressed by the fact that section 7635 also expressly states that if the child is made a party and is represented by a guardian ad litem, the guardian need not act through counsel if the guardian is a relative of the child. This constitutes an exception to the general rule that *prohibits* a guardian ad litem from acting in propria persona. (See *J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 966-969 (*J.W.*).)[10] Once again it is clear that the Legislature assumed that the mother or other relative could adequately represent the child.

So under section 7635 a minor under the age of 12 need not be joined as a party, although a minor age 12 or older must. According to real party in interest's position, a minor joined to the action would be bound by the judgment but an unjoined minor would not; even though in both cases, as a practical matter, the litigation was likely to have been managed by the mother who in either case might, or might not, be represented by counsel. If this were to be the result of the statute, it would qualify as illogical or even absurd; such a result is, of course, to be avoided. (Civ. Code, § 3542 ["Interpretation

---

**10** *J.W.* was also a paternity action, but because the minor was over the age of 12 he had to be made a party. His mother was appointed as guardian ad litem but argued that she could not afford counsel to act in that capacity—although if she had been able to prosecute the action solely in her own name, she could legally have represented herself. The court declined to make an exception to the rule stated in the main text and refused to allow the mother to proceed without counsel for the child. Section 7635 was subsequently amended to allow the guardian ad litem to proceed without counsel if a relative of the child.

must be reasonable"]; *California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1067.)

Our reading of section 7635 makes it clear to us that in the ordinary case the minor child must be held bound by the judgment obtained by his or her mother. Such an approach is also consistent with the public policy in favor of the finality of judgments. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981-982 [citing the policy and noting the specific means by which judgments may be later attacked, none of which applies here].)[11] Although the matter appears relatively clear to us, we issued an order to show cause because we must discuss what we believe to be unnecessarily broad language in previous cases.

To defeat J.J.'s motion, the trial court relied on *County of Shasta v. Caruthers* (1995) 31 Cal.App.4th 1838, 1847, footnote 3 (*County of Shasta*), which we agree was correctly decided. In that case,[12] brought by the district attorney to establish liability for child support, the mother had several years earlier filed a paternity action against the alleged father. After discharging her attorney, the mother signed an agreement drawn up by the alleged father's attorney releasing him from further liability upon the payment of

---

[11] As mentioned above, Mother did file a motion to vacate the judgment of nonpaternity, but lost.

[12] The appellate court's view of the matter is clearly intimated in the opening sentence: "This appeal presents the question whether an alleged father can 'buy out' his duty to support his minor child by a 'settlement' with the child's mother." This sentence clearly expects the answer "No."

8

$15,000 to the mother.  The paternity action was dismissed with prejudice.  In reversing the trial court's grant of summary judgment based on the alleged father's claim of issue preclusion, the appellate court very properly found that "[the child's] interests were not represented or considered in the Los Angeles action, i.e., [the mother] was not acting 'in a proper representative capacity'" when she settled the matter without a determination of paternity and for a relatively trivial sum of money, which was furthermore payable directly to her without restriction.  (*Id*. at p. 1847, fn. 3.)  Having thus refused to give the prior dismissal preclusive effect, the court then applied the rule that a child's right to support may not be contracted away by the parent.  (*Id*. at p. 1849.)  With all of this we agree.

But the *County of Shasta* opinion contains language that, as we indicated *ante*, we think is far too broad, and we therefore reject the contention that it controls this case.  For example, the court commented that "we question whether a child's best interests can ever be adequately represented if the child is not a party to the action."  (*County of Shasta*, *supra*, 31 Cal.App.4th at p. 1847.)  Yet when that opinion was filed, the Legislature had already decided that it was proper to allow the mother to prosecute such an action in her own name, and in so doing had altered existing law that prohibited such a procedure by requiring joinder of the child.  (See Civ. Code, former § 7008 and *Perez v. Department of Health*, *supra,* 71 Cal.App.3d 923.)  Thus, the Legislature had already answered the appellate court's question with, "Yes, they can."  The same criticism can be applied to the *County of Shasta* statement that "[m]ore importantly, [the child] was not a party to the Los Angeles action and *thus* her interests were not fully protected and considered there."

9

(*County of Shasta,* at p. 1843; italics added.)  In our view the conclusion introduced by "thus" is simply improper, given the legislative *imprimatur* given to the procedure by which the mother or other plaintiff may proceed without joining a minor under 12 years of age.

   *County of Shasta*, *supra*, 31 Cal.App.4th 1383 and the result in *Ruddock*, *supra*, 91 Cal.App.3d 271, can best be understood in the context of those cases.  In *County of Shasta,* as we have explained, the minor's interests were clearly *not* protected by her mother; in *Ruddock*, the court ruled against preclusion because the record did not affirmatively show that the child had been protected by a "full and fair adversary hearing resulting in a judgment on the merits on the issue of paternity." (*Ruddock*, at p. 284.)[13]

---

   [13] The opinion in *Ruddock* is wide-ranging as it deals with various theories on which the minor might be considered bound by an Oregon finding of nonpaternity contained in a dissolution judgment, which seemed to be based at least in part on the Oregon court's unwillingness to "thrust upon an innocent child a father who denies such relationship. . . ." (*Ruddock*, *supra*, 91 Cal.App.3d at p. 275.)  The *Ruddock* court first purports to "hold" that a child is not bound by a paternity determination in a dissolution action to which the child is not a party because there might not be a full adversarial hearing on the issue (*id.* at p. 278); it then deals with a privity argument and appears to accept at least arguendo that a child might be considered in privity with the mother, but not "in the absence of a full and fair adversary hearing . . . *particularly if collusion is potentially involved or there is a stipulation or agreement by which the issue is decided with less than complete evidence before the court.*" (*Id*. at p. 284, italics added.)  While acknowledging that the Uniform Parentage Act (Fam. Code, § 7600 *ff.*) and Civil Code former section 7008 allowed a paternity action to be brought solely by the mother, it also relied upon the latter section as requiring that a minor be joined in a marital dissolution if any judgment was to be binding on the child; yet it also cites the principles of finality and stresses again that the record did not affirmatively show that the minor had received adequate representation in the dissolution action. (*Ruddock*, at p. 285.)  That is, the court waffles by continuing to rely not on a bright-line rule of no preclusion, but on its inability to be confident that the minor's rights had been fully protected and asserted in the Oregon proceeding.

10

*County of Shasta* also stresses that the mother settled the case without court review, which would at least have been required had the minor been a party and represented by a guardian ad litem. (*County of Shasta*, at 1847-7848; see Code Civ. Proc., § 372, subd. (a) [on the powers of a guardian ad litem].)

The factors that influenced the decisions in these cases are not present here. The paternity action was not settled or compromised; it was indisputably fully litigated. No one who has reviewed the files can doubt that Mother asserted and pursued E.C.'s rights with the utmost zeal.[14] The primary reason why J.J. prevailed and Mother lost was section 7540 and the lapse of time. No diligent preparation or strenuous advocacy could have changed the result mandated by statute. There is no reason whatsoever to allow the minor a second opportunity to litigate an issue that was so exhaustively litigated on her behalf.

We note, as Mother and real party in interest have argued, that the conclusive presumption is most commonly applied to preserve a family unit where the husband is willing to maintain a parental relationship with the child—that is, to refuse to allow a biological father to intervene in a family unit. (See, e.g., *Michelle W. v. Ronald W.* (1985) 39 Cal.3d 354, 363.) Significantly, the 2005 judgment did find that P.C. had held E.C. out as his own child; although by that time P.C.'s relationship with Mother had disintegrated, the court might reasonably have concluded that P.C. might still feel an

---

**14** Mother was represented by counsel in the paternity proceeding that resulted in the judgment of nonpaternity at issue here. Our record reflects that that case included several hearings and substantial discovery.

11

emotional attachment to the child, which could revive into at least some kind of parental relationship in the future.

But in the end, the point is not relevant. What matters is not whether the 2005 judgment was correct or not. What matters is that it was reached after a full adversarial struggle, and that it is now, and has been for years, legally final. Although E.C. was not formally a party, the Legislature has determined that this is not necessary; and as we have explained above, we cannot interpret the Legislature's actions as intending that young children who are not joined will not be bound by the judgment, while older children and younger children who are formally joined will. E.C. received exactly the same representation that she would have done had she been a party, and it is time that the issue be put to rest.

### DISPOSITION

The petition for writ of mandate is granted. Let a peremptory writ of mandate issue, directing the Superior Court of Riverside County to vacate its order denying J.J.'s motion for summary judgment, and to enter a new order granting said motion. In the interests of justice, so that the minor does not further deplete the assets available for her care, the parties shall bear their own costs.

Petitioner is directed to prepare and have the peremptory writ of mandate issued,

12

copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P.J.

I concur:

McKINSTER _____
J.

King, J., Dissenting.

Initially, I note that *County of Shasta v. Caruthers* (1995) 31 Cal.App.4th 1838 is basically on all fours; I see no reason to deviate from this precedent. More importantly, the underlying judgment is based on a conclusive presumption which, as applied in this case, deprives real party in interest, E.C., of her due process rights.

"[T]he establishment of the parent-child relationship is the most fundamental right a child possesses to be equated in importance with personal liberty and the most basic of constitutional rights. To hold a child bound prospectively by a finding of nonpaternity in a divorce action *in which the child was not a party* would be to allow the conduct of the mother to foreclose the most fundamental right a child possesses in our system of jurisprudence." (*Ruddock v. Ohls* (1979) 91 Cal.App.3d 271, 277-278, italics added.)

Here, the judgment that petitioner, J.J., wishes to enforce by way of collateral estoppel, is a judgment based on the conclusive presumption found in Family Code section 7540.[15] As discussed *infra*, application of the conclusive presumption to the present facts violates E.C.'s due process rights. As such, collateral estoppel should not be invoked to preclude E.C. from litigating the issue of paternity. "A civil litigant does not have an absolute right to application of the collateral estoppel doctrine. '[E]ven where the minimal prerequisites for invocation of the doctrine are present, collateral estoppel

_____

[15] All further statutory references are to the Family Code unless otherwise indicated.

1

"'is not an inflexible, universally applicable principle; policy considerations may limit its use where the . . . underpinnings of the doctrine are outweighed by other factors.'"" [Citation.]" (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 249-250.)  The present matter is just such a case.

We begin by noting that E.C. was not a party to the proceeding for which J.J. wishes to argue the applicability of collateral estoppel.  The prior action was brought solely in the name of mother, A.T. (Mother).  We agree with *County of Shasta v. Caruthers, supra,* 31 Cal.App.4th 1838, wherein the court states:  "[T]here is nothing in the quoted history [of section 7635] indicating a legislative design to vest unfettered, dispositive control of fundamental rights personal to the minor in the minor's parent." (*Id.* at p. 1846.)  "Even though Family Code section 7635 does not mandate a child under 12 be made a party to an action to establish paternity, it does not logically follow that it therefore authorizes the child's mother to compromise or foreclose the right of the child to establish paternity and prospectively to obtain support simply by prosecuting a paternity action in her own name without joining the minor as a party.  'To bind the child by the discretion or indiscretion, as the case may be, of the mother in choosing counsel or trial tactics . . . without formal joinder, is to confer upon the mother the right to determine a child's most fundamental right next to life itself.' [Citation.]" (*Id.* at p. 1847.)  Had J.J. wished to bind E.C. to the judgment in the prior proceeding, a motion for joinder could have been made.

2

Section 7540 provides for a conclusive presumption that a child is a child of the marriage if the husband and wife are cohabitating. "However, the statutory presumption is not applicable in all cases. Because, by its terms the conclusive presumption prevents presentation of evidence with respect to the issue of biological paternity, it has been the subject of a number of constitutional challenges. The courts have resolved these challenges by balancing the public and private interests which arise in particular cases. Thus, the cases have consistently held that where the state does not have a legitimate interest in enforcing the conclusiveness of the presumption, an interested party may, notwithstanding the presumption, present evidence which establishes that a husband is not the biological father of his wife's child. [Citations.] [¶] . . . 'As Justice Scalia noted in *Michael H*. [*v. Gerald D.* (1989) 491 U.S. 110], irrebutable presumption cases ultimately call into question not the adequacy of the procedures but "the adequacy of the 'fit' between the classification and the policy that the classification serves." [Citation.] In this case, in which [the child] has no available mother, her presumed father is a stranger to her, and her most important psychological relationship is to a sibling to whom she is presumed biologically unrelated, we conclude the statute's classification does not serve the interests it was designed to protect.' [Citation.]" (*In re Marriage of Freeman* (1996) 45 Cal.App.4th 1437, 1446-1447; see *In re Lisa R.* (1975) 13 Cal.3d 636, 647-649 [the test requires a case-by-case weighing of the state's interest in maintaining the presumption as opposed to the private interests in rebutting it].) "[R]esolution of substantive due process attacks upon the conclusive presumption depends on the

3

circumstances prevailing in each particular case. [Citations.] . . . [A] court may refuse to apply the conclusive presumption when its underlying policies are not furthered." (*In re Kiana A*. (2001) 93 Cal.App.4th 1109, 1114-1115.)

As applied in the present case, there is little to no state interest in maintaining the presumption. The underlying policies of section 7540 are to "promote[] important social policies: preserv[e] . . . the integrity of the family, protect[] . . . the welfare of children by avoiding the stigma of illegitimacy and keep[] them off welfare rolls, and insur[e] . . . the stability of titles and inheritance." (*Estate of Cornelious* (1984) 35 Cal.3d 461, 465.) Here, E.C. was conceived during wedlock; at the time of her birth, husband and Mother were separated. Six months after E.C.'s birth, the district attorney's office filed a support action against J.J. at the behest of Mother. Approximately one month thereafter, Mother and J.J. signed a support agreement, resulting in the dismissal of the support action. A year went by, and the dissolution action between Mother and husband was resolved. As part of the resolution, E.C. was not listed as a child of the marriage, nor was there any provision for child support. Thereafter, a paternity action from which J.J. seeks the application of collateral estoppel in the present action was filed and resolved.

The upshot of these events is that E.C. has been adjudicated fatherless.[16]

---

[16] The judgment of dissolution between Mother and P.C. was entered on April 29, 2002. E.C. was not listed as a child of the marriage. As between Mother and P.C., the judgment is conclusive on the issue that P.C. is not the father of E.C. The judgment acts as a bar to any further action between the parties and is res judicata as to the issue of parentage. (See *Adamson v. Adamson* (1962) 209 Cal.App.2d 492; *Garcia v. Garcia* (1957) 148 Cal.App.2d 147.) While under *Daniels v. Daniels* (1956) 143 Cal.App.2d 430 it can be argued that the judgment is not binding or conclusive as it relates to E.C.,

*[footnote continued on next page]*

4

Clearly the application of the conclusive presumption does not preserve the integrity of the family.  E.C. is aware that J.J. is her natural father and she has been shunned by husband, her presumptive father.  From both a societal, as well individual, point of view, it is beneficial for E.C. to be able to receive child support and any other benefits from J.J. which may move her forward in life.  Further, a declaration of paternity may further yield some personal relationship between J.J. and E.C., which would ostensibly be beneficial to all.

The conclusive presumption is not to be blindly applied.  As such, the judgment, which runs contrary to E.C.'s due process rights, should not be accorded collateral estoppel status.  Summary judgment was properly denied.

KING
J.

---

*[footnote continued from previous page]*
this is not necessarily so.  Just as the majority wishes to bind E.C. to the present judgment of nonpaternity, *Armstrong v. Armstrong* (1976) 15 Cal.3d 942 arguably would allow the judgment entered between Mother and P.C. to be preclusive on E.C. as it relates to seeking child support from P.C.