Filed 3/22/24  Hanlin v. X-Pest CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GAVIN G. HANLIN et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>X-PEST, INC. et al.,<br><br>        Defendant and Respondent. | A165553<br><br>(San Francisco County<br>Super. Ct. No. CGC-19-581323) |

This is the second of two actions alleging defective and uninhabitable conditions (including a bedbug infestation) in a family's residential dwelling unit in San Francisco. In or around 2014, the mother of then-minors Gavin G. Hanlin and Chayton M. Hanlin sued defendant X-Pest, Inc. (X-Pest) and others, alleging that X-Pest's negligent performance of pest control services in the family's unit caused the parents to sustain personal injuries and emotional distress. The case went to trial in 2016, and the trial court entered a directed verdict and judgment in favor of X-Pest. After the two minors reached the age of majority, they brought the instant action in 2019 against X-Pest for negligence and intentional torts arising out of the same circumstances as the prior action. The trial court, however, sustained X-Pest's demurrer to plaintiffs' complaint on res judicata grounds and denied their motion for leave to file an amended complaint and for reconsideration of the demurrer ruling.

1

In contending the trial court erred in applying a res judicata bar, plaintiffs assert they were not parties in the earlier litigation or in privity with their mother, and they never presented evidence of their damages in that trial. We conclude, under a close examination of the circumstances in this case, that sufficient privity exists to bar plaintiffs from relitigating the dispositive issue of X-Pest's tortious liability. Plaintiffs had an identity of interest with and were adequately represented by their mother on the liability issue, which was actually litigated and necessarily decided against the mother on the merits in the prior suit. Accordingly, we will affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

## A. Allegations of the Operative Complaint

We accept as true the following material allegations of the operative first amended complaint. (*Villarroel v. Recology, Inc.* (2023) 97 Cal.App.5th 762, 768.)

Plaintiffs were occupants of a residential dwelling unit at The Harcourt in San Francisco. During their occupancy, plaintiffs experienced numerous health and safety hazards in their unit, including a severe bedbug infestation. X-Pest, a licensed pest control company, negligently performed pest control services at The Harcourt, including in plaintiffs' unit, and as result, plaintiffs suffered injuries including bedbug bites and severe emotional distress.

Plaintiffs assert five causes of action against X-Pest for negligence per se, negligence, nuisance, intentional infliction of emotional distress, and negligent infliction of emotional distress. At the time these causes of action accrued, plaintiffs were under the age of majority, but they are now legal adults.

**B. X-Pest's Demurrer**

X-Pest demurred to the first amended complaint on the ground that plaintiffs failed to state sufficient facts to constitute a cause of action because their claims were barred by res judicata. According to X-Pest, the instant matter was the second of two lawsuits involving plaintiffs' residence at The Harcourt, and the prior suit, filed by plaintiffs' parents, John Hanlin (Hanlin) and Yoshabel Clements (Clements), ended in a directed verdict and judgment in favor of X-Pest following a trial in 2016.

In a brief order, the trial court, citing *Garcia v. Rehrig Internat., Inc.* (2002) 99 Cal.App.4th 869 (*Garcia*), sustained X-Pest's demurrer to the first amended complaint without leave to amend.

**C. Motion for Leave and Reconsideration**

Following the demurrer ruling, but prior to entry of judgment, plaintiffs moved for leave to file a second amended complaint and for reconsideration of the demurrer ruling (hereafter motion for leave/reconsideration). The trial court denied the motion, finding the claims against X-Pest in plaintiffs' proposed second amended complaint were barred under the *Garcia* decision.

Plaintiffs timely appealed from the ensuing judgment.

DISCUSSION

"A demurrer tests the sufficiency of the plaintiff's complaint, i.e., whether it states facts sufficient to constitute a cause of action upon which relief may be based." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1469 (*McKell*).) "On demurrer a court considers the allegations on the face of the complaint and any matter of which it must or may take judicial notice. [Citation.] If judicially noticed records of prior litigation show the complaint is barred by collateral estoppel, the demurrer

3

may be sustained." (*Groves v. Peterson* (2002) 100 Cal.App.4th 659, 667.) "On appeal, we review the trial court's sustaining of a demurrer without leave to amend de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law and applying the abuse of discretion standard in reviewing the trial court's denial of leave to amend." (*McKell*, at p. 1469.)

**A. Judicial Notice of Records in Prior Action**

In the proceedings below, the trial court granted the parties' requests for judicial notice of various court records filed in *Clements v. Harcourt Group* (Super. Ct. S.F. City and County, 2012, No. CGC-12-526503) (*Clements*). Although the parties have not filed corresponding requests regarding these records in this court (see Cal. Rules of Court, rule 8.252), we sua sponte take judicial notice of the following records filed in *Clements*: the complaint filed by Clements; the compulsory cross-complaints filed by Hanlin and Clements; X-Pest's motion for a directed verdict in *Clements*; X-Pest's motions in limine in *Clements*; and excerpts from the reporter's transcript of the *Clements* trial. (See Evid. Code, §§ 452, subd. (d), 459, subd. (a); *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 382 [judicial notice of existence of court records and " 'the truth of the results reached' "].)

The judicially-noticed records demonstrate as follows. In November 2012, plaintiffs' mother (Clements) filed a lawsuit against The Harcourt, its property manager Sojourn Properties, Inc. (Sojourn), and several other defendants for various claims alleging defective and uninhabitable conditions in her residential dwelling unit, including a bedbug infestation. After Sojourn filed a cross-complaint against Clements and plaintiffs' father (Hanlin) for breach of the rental agreement and unpaid rent, Clements and Hanlin each filed a cross-complaint against various individuals and entities,

4

including X-Pest.  In their cross-complaints, Clements and Hanlin asserted four claims against X-Pest arising out of its pest control services at The Harcourt and their dwelling unit:  negligence, negligence per se, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Trial proceedings in *Clements* commenced in January 2016.  Before the jury was empaneled, Hanlin voluntarily dismissed his cross-complaint. During the *Clements* trial, the three children of Clements and Hanlin (including the two plaintiffs in this case) were permitted to testify regarding the bedbug infestation, the numerous bites that they and Clements had sustained, and the effect of the infestation on Clements's emotional and physical state.

In February of 2016, the trial court in *Clements* granted X-Pest's motion for a directed verdict on all four causes of action asserted against it in Clements's cross-complaint.  The court found that X-Pest did not owe a duty of care to Clements under any contract, statute, or perceived special relationship.  While acknowledging X-Pest had a general duty to use ordinary care under the circumstances, the court determined that duty did not require X-Pest to ensure there would never be bedbugs in Clements's unit, but rather, to use such skill, prudence, and diligence as other members of its professional community, and that Clements failed to present expert testimony to counter X-Pest's expert testimony that X-Pest did not breach its duty and the applicable standard of care in the pest control industry.  Finally, the court found there was no evidence of outrageous conduct by X-Pest to support Clements's claims for intentional infliction of emotional distress.

### B. Collateral Estoppel

Res judicata is "an umbrella term" that encompasses "two separate 'aspects' of an overarching doctrine":  claim preclusion and issue preclusion.

(*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–824.) Claim preclusion bars claims that "were, or should have been, advanced in a previous suit involving the same parties," while issue preclusion (or collateral estoppel) precludes parties and their privies from relitigating issues that were actually decided on the merits in a prior suit. (*Id.* at p. 824.) The elements of collateral estoppel are: "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.)[1]

"Privity ' "refers 'to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of [res judicata]. [Citations.]' [Citations.] ' "This requirement of identity of parties or privity is a requirement of due process of law." ' " ' " (*Mooney v. Caspari* (2006) 138 Cal.App.4th 704, 718.) " ' "Whether someone is in privity with the actual parties requires close examination of the circumstances of each case." ' " (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1070 (*Seadrift*).) " ' "The circumstances must also have been such that the nonparty should reasonably have expected to be bound by the prior adjudication." ' " (*Ibid.*)

*Garcia*, relied upon by the trial court below, is instructive. In that case, a three-year-old was injured after falling out of a shopping cart, and his

---

[1] Although plaintiffs devote most of their briefing to the argument that the claim preclusion aspect of res judicata does not apply, we, like the trial court, focus our analysis on the dispositive issue of collateral estoppel.

parents sued the shopping cart manufacturer on negligence and products liability theories. (*Garcia*, *supra*, 99 Cal.App.4th at p. 873.) After the jury found in favor of the defendant, the child brought his own lawsuit through a guardian ad litem against the same defendant under negligence and products liability theories. (*Ibid.*) The appellate court held that the suit was barred by collateral estoppel because the liability issues to be determined in the child's case were identical to those actually litigated and resolved on the merits in the defendant's favor in the parents' prior lawsuit, and that there was sufficient privity between the parents and the child to preclude the child's relitigation of the liability issues in the second suit. (*Id.* at pp. 872, 878.)

As *Garcia* explained, " '[i]n the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication.' " (*Garcia*, *supra*, 99 Cal.App.4th at p. 877.) *Garcia* found those requirements were met on the facts before it, as the parents adequately represented their child's interests in the previous lawsuit, shared an identity of interest with him, and the young child had "no cognizable independent interest in relitigating a liability claim that has been determined adversely to his parents." (*Id.* at p. 878.)

In so concluding, *Garcia* joined several other courts in declining to follow *Kaiser Foundation Hospitals v. Superior Court* (1967) 254 Cal.App.2d 327, which held that a minor daughter was not collaterally estopped from relitigating a hospital's liability for the wrongful death of her mother even though the jury had found the hospital not liable in an earlier malpractice action by the mother based on the same facts. (*Garcia*, at pp. 877–878.) As

*Garcia* explained, *Kaiser* " ' "reflects outdated notions of privity under the California law of collateral estoppel. The concept of privity 'has been expanded . . . to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify the application of the doctrine of collateral estoppel.' " ' " (*Garcia*, at p. 878, citing *Brown v. Rahman* (1991) 231 Cal.App.3d 1458, 1462–1463 (*Brown*); *Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741, 745–747; *Aguilar v. Los Angeles County*. (9th Cir. 1985) 751 F.2d 1089, 1093.)

With these authorities in mind, we turn to the present case. As recounted above, plaintiffs' parents previously filed cross-complaints for negligence and intentional torts against X-Pest arising out of X-Pest's pest control services in their residential dwelling unit at The Harcourt. At issue in both *Clements* and the instant case were the same liability questions as to whether X-Pest owed and breached a duty of care to the occupants of the unit in question and engaged in outrageous conduct that caused the occupants to suffer emotional distress. Although Hanlin voluntarily dismissed his cross-complaint, these liability issues were actually and finally litigated and necessarily decided against Clements and in favor of X-Pest after the trial court granted X-Pest's motion for a directed verdict.

Though plaintiffs were not parties in *Clements*, we conclude, under a close examination of the circumstances of this case, that they were in privity with Clements for purposes of precluding relitigation of X-Pest's liability. Clements shared an identity of interest with plaintiffs because they all sought the same goal of recovering against X-Pest for its allegedly inadequate pest control services in their unit at The Harcourt. Clements also adequately represented the interests of plaintiffs on the issue of X-Pest's liability, as she had " 'the same interest as the party to be precluded' " and " 'a strong motive

to assert that interest.' " (*Seadrift*, *supra*, 60 Cal.App.4th at p. 1071.)  On this score, we note that both the *Clements* complaint and compulsory cross-complaint specifically alleged that the bedbug infestation posed health and safety risks to Clements and her children; that plaintiffs testified at the *Clements* trial regarding not only the impact of the bedbug infestation on their mother, but the bedbug bites they themselves had sustained; and that Hanlin was attorney of record in both *Clements* and in the instant action. (See *Brown*, *supra*, 231 Cal.App.3d at p. 1463 [identity of interest and adequate representation established where same attorney represented decedent in pre-death personal injury action and heirs in subsequent wrongful death suit].)  As such, plaintiffs could reasonably expect that they would be bound by an adverse finding against Clements relating to X-Pest's liability for its pest control services in their unit.  Like the parent-child relationship in *Garcia*, the relationship between Clements and plaintiffs was " ' " ' "sufficiently close" so as to justify the application of the doctrine of collateral estoppel.' " ' " (*Garcia*, *supra*, 99 Cal.App.4th at p. 878.)

Plaintiffs' arguments to the contrary are unpersuasive.  They contend *Garcia* is distinguishable because there, the parents' claims for emotional distress were "wholly derivative" of the duty of care the defendant owed to their child, whereas here, Clements's personal injury and emotional distress claims were based on a "separate and independent" duty that X-Pest owed directly to her.  We disagree.  *Garcia*'s conclusion that the parents and child were in privity did not rest on the "derivative" nature of the parents' claims, but on the child's identity of interest with, and adequate representation by, his parents on the liability question in the first action.  (See *Garcia*, *supra*, 99 Cal.App.4th at p. 877.)  As discussed, those elements are met in this case as well.

9

Plaintiffs further contend the adequate representation requirement for privity is lacking in this case because they were minors at the time of the *Clements* action, and neither Clements nor Hanlin was ever appointed plaintiffs' guardian ad litem in the prior suit. We again are unpersuaded, as plaintiffs' cited authorities do not support a guardian ad litem requirement for the application of collateral estoppel in all cases involving minors. They are also materially distinguishable as involving the issue of paternity in multiple actions for support and maintenance.

For example, *County of Shasta v. Caruthers* (1995) 31 Cal.App.4th 1838 (*Caruthers*) involved a prior support action by a mother against an alleged father that she dismissed with prejudice in exchange for payments by the alleged father, while leaving the issue of paternity unresolved. (*Id.* at pp. 1841–1842.) Subsequently, the county district attorney filed suit on behalf of the mother's minor child against the alleged father to establish paternity and for child support. (*Id.* at p. 1842.) *Caruthers* held that collateral estoppel did not bar the minor's suit because the issue of paternity had not been litigated or determined in the mother's action; the minor's right to support and maintenance could not be limited or contracted away by the parents; the mother and the district attorney were different parties and there was no privity between them; the minor and her mother were not in privity because they did not have identical interests[2]; and the minor's "interests were

_____

[2]     Plaintiffs rely on this portion of *Caruthers* to broadly argue that privity is not created from the parent-child relationship. But *Caruthers*' precise point was that a "mother and child do not always have identical interests when the issue of paternity is raised outside a dissolution action." (*Caruthers*, *supra*, 31 Cal.App.4th at p. 1846.) That reasoning, and the decisional authorities it is based on, have no application in this case. The same can be said for *Caruthers'* seemingly broad assertion that " '[t]he parent-child relationship . . . is traditionally excluded from privity notions for

10

not fully protected and considered" in the earlier action. (*Id.* at pp. 1842–1844; see also *Everett v. Everett* (1976) 57 Cal.App.3d 65, 69 [minor's claim for support and maintenance could not be " 'limited or contracted away by his parents' " without court approval].) *Caruthers'* collateral estoppel holding does not logically apply where, as here, a parent and her children share an identity of interest on a common liability issue that was actually litigated and necessarily decided against the parent on the merits in her earlier action.

Also unavailing is plaintiffs' contention that X-Pest should be judicially estopped from arguing that plaintiffs' interests were adequately represented in *Clements* because of an inconsistent position X-Pest took in its motions in limine. The elements of judicial estoppel are: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position . . . ; (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)

Here, plaintiffs fail to demonstrate that the two actions involved totally inconsistent positions taken by X-Pest. In *Clements*, X-Pest moved to prohibit evidence or testimony before the jury relating to any injuries or emotional distress suffered by the children, arguing that because the children were nonparties, the admission of such evidence would unduly consume time, mislead the jury, and create a substantial danger of undue prejudice. But

---

res judicata purposes.' " (*Id.*, at p. 1843.) Notably, *Caruthers* was addressing privity in the specific context of a minor's subsequent paternity action, as evident from the court's citation to a non-California case finding no res judicata bar to a daughter's paternity action after the dismissal of her mother's prior paternity suit. (See *Caruthers*, at p. 1843, citing *Johnson v. Hunter* (Minn. 1989) 447 N.W.2d 871, 874.)

11

there was nothing inconsistent between that position regarding the children's *injuries* and X-Pest's argument on demurrer that plaintiffs' interests were adequately represented in *Clements* on the *liability* question common to both actions.  As such, X-Pest is not judicially estopped from arguing there was sufficient privity to bar relitigation of the liability issue.

We quickly dispense with plaintiffs' remaining contentions.  The record on appeal is not incomplete for lack of a judgment in favor of X-Pest; to the contrary, the record contains a notice of entry of judgment attaching the signed judgment in favor of X-Pest.  Nor is the record insufficient to establish that the same issues were actually litigated and necessarily determined in the prior proceeding, as the judicially-noticed records from *Clements* satisfactorily demonstrate the elements of collateral estoppel were met in this case.  Finally, it is of no consequence that Hanlin voluntarily dismissed his cross-complaint in *Clements*, as the liability issues against X-Pest were still actually and finally litigated and necessarily decided at trial on Clements's cross-complaint.

For the foregoing reasons, we conclude the trial court properly sustained the demurrer to plaintiffs' first amended complaint as barred by collateral estoppel.

**C. Leave to Amend**

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  On the record before us, we see no abuse of discretion.

12

Plaintiffs argue they should have been granted leave to amend because the new and different factual allegations in their proposed second amended complaint sufficiently demonstrated that the action is not barred by collateral estoppel. Our review of the proposed second amended complaint, however, reveals that plaintiffs' new allegations primarily focus on their limited participation in *Clements* and their lack of representation by a guardian ad litem in that suit. Even with the inclusion of these allegations, plaintiffs' suit would still be barred by collateral estoppel for the reasons already discussed.

## DISPOSITION

The judgment is affirmed. X-Pest is entitled to its costs on appeal.

_____

Fujisaki, J.


WE CONCUR:


_____

Tucher, P.J.

_____

Rodríguez, J.


*Hanlin v. X-Pest* (A165553)


13